Philip H. Stillman, Esq. SBN# 152861
STILLMAN & ASSOCIATES
3015 North Bay Road, Suite B
Miami Beach, Florida 33140
Tel. and Fax: (888) 235-4279
pstillman@stillmanassociates.com

Attorneys for defendant FOUR SISTERS INN, INC.

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PETER STROJNIK,<br><br>               Plaintiff,<br>vs.<br><br>FOUR SISTERS INN, INC.<br><br>               Defendant. | Case No. 19-cv-02991-0DW-JEM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6)**<br><br>Date: June 24, 2019<br>Courtroom: 5D<br>Time: 1:30 p.m.<br><br>Hon. Otis D. Wright II<br><br>Complaint filed: April 18, 2019 |

Memo in Support of Motion to Dismiss Complaint

1

# TABLE OF CONTENTS

2

3    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5       I.   STROJNIK LACKS STANDING OR FAILS TO STATE A CLAIM UNDER
6          THE ADA FOR ALLEGED WEBSITE ACCESSIBILITY . . . . . . . . . . . . . . 3

7          A.   Strojnik Cannot Show An Injury In Fact . . . . . . . . . . . . . . . . . . . . . . 3

8              1.   Strojnik Encountered No Barrier To The Use Of Defendant's
              Facilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9              2.   Defendant's Website Is Not A Public Accommodation. . . . . . . . 4

10             3.   The DOJ Has Opined That The Regulations Only Require A
11                 "Place Of Public Accommodation" To Provide Reasonable
              Alternatives. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12         B.   There Is No Causal Connection Between Any Alleged "Injury" And
13            Defendant's Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   II.  STROJNIK LACKS STANDING PURSUANT TO CALIFORNIA'S UNRUH
14         ACT TO BRING HIS SECOND AND THRID CAUSES OF ACTION . . . . . 7

15         A.   The Unruh Act Does Not Apply To Alleged Discrimination Suffered By
16            Parties Outside California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17         B.   Strojnik Never Was Denied Lodging. . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.   Strojnik's Second Of Action Fails To State A Claim. . . . . . . . . . . . . 9

18

19      III.  STROJNIK DOES NOT HAVE A SEPARATE CLAIM UNDER THE
      UNRUH ACT FOR THE IDENTICAL CONDUCT THAT IS THE BASIS OF
20         STROJNIK'S DISABLED PERSONS ACT CLAIM. . . . . . . . . . . . . . . . . 11

21      IV.  STROJNIK DOES NOT HAVE STANDING TO ASSERT CLAIMS UNDER
      THE ADA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22         A.   Standing Requirements Under The ADA For Any Claims. . . . . . . . . 12

23         B.   Strojnik Does Not Allege An "Imminent Injury." . . . . . . . . . . . . . . 12

24         C.   Strojnik Fails To Establish That He Personally Suffered An "Injury In
         Fact." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

25

26      VI.  PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED FOR
      FAILING TO STATE A CLAIM OR FOR LACK OF SUPPLEMENTAL
27         JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28         A.   There Is No Viable Negligence Claim. . . . . . . . . . . . . . . . . . . . . . . . 17

B.    Negligence Cannot Be Based On The ADA. . . . . . . . . . . . . . . . . . . . . 18

C.    Plaintiff's Request For Punitive Damages Should Be Stricken.. . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

<u>Cases</u>

*Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002) . . . . . <u>4</u>

*Advocates for Individuals with Disabilities LLC v. WSA Props. LLC*, 210 F. Supp. 3d 1213, 1223 (D. Ariz. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>7</u>, <u>16</u>

*Anderson v. Macy's Inc.*, 2012 U.S. Dist. LEXIS 108569 at *4 (W.D. Pa. Aug. 2, 2012) . . <u>4</u>

*Ariz. ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010) . . <u>4</u>

*Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). . . . . . . . . . <u>6</u>

*Brooke v. Capitol Regency LLC*, 2017 U.S. Dist. LEXIS 75428 (E.D.Cal. May 17, 2017) <u>16</u>

*Brooke v. Choice Hotels Int'l, Inc.*, 2016 U.S. Dist. LEXIS 60062, at pp. 7-8 (S.D. Cal. May 5, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>14</u>, <u>15</u>

*Brooke v. DS Hospitality, LLC,* Case No. 16-cv-06750-VC (N.D.Cal. Dec. 15, 2016) . . . <u>13</u>

*Brooke v. H&K P'ship*, 2016 U.S. Dist. LEXIS 148572, at 5 (E.D. Cal. Oct. 26, 2016) . . . <u>3</u>, <u>12</u>

*Brooke v. Newport Hotel Holding LLC*, 2016 U.S. Dist. LEXIS 187101, at 9 n.3 (C.D. Cal. Apr. 29, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>13</u>

*Brooke v. Pacific Gateway Ltd.*, 2017 U.S. Dist. LEXIS 70957 (S.D. Cal. May 9, 2017) . <u>16</u>

*Brooke v. Peterson*, 185 F. Supp. 3d 1203, 1209-10 (C.D. Cal. 2016) . . . . . . . . . . . . . <u>7</u>, <u>16</u>

*Brooke v. RK Inv. Props.*, 2018 U.S. Dist. LEXIS 9120, at 3 (N.D. Cal. Jan. 19, 2018) . . <u>12</u>, <u>14</u>

*Brooke v. The Irvine Company, LLC,* 2016 U.S. Dist. LEXIS 194454 (C.D. Cal. Oct. 7, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>1</u>

*Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979) . . . . . . . . . . . . . . . . <u>3</u>

*California Service Station etc. Assn. v. American Home Assurance Co.* 62 Cal.App.4th 1166, 1178 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>17</u>

*Chapman v. Pier 1 Imports, Inc.,* 631 F.3d 939, 946 (9th Cir. 2011). . . . . . . . . . . . . . . . . <u>3</u>

*Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1663 (2000). . . . . . . . . . <u>6</u>

*Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). . . . . . . . . . . . . . . . . <u>4</u>

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . <u>3</u>

*D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) . . . . . <u>15</u>

*Gomez v. Bang & Olufsen Am., Inc.*, 2017 U.S. Dist. LEXIS 15457, *12-13 (S.D. Fla. Feb. 2, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>4</u>, <u>5</u>

1
2
*Gorecki v. Dave & Buster's, Inc.*, 2017 U.S. Dist. LEXIS 187208, at *14 (C.D. Cal. Oct. 10, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Guerra v. W. L.A. Coll.*, 2018 U.S. Dist. LEXIS 141029, at *19-20 (C.D. Cal. Aug. 20, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19
3

4
*Haynes v. Genesco, Inc.*, 2018 U.S. Dist. LEXIS 5939, at *5 (S.D. Fla. Jan. 11, 2018) . . . 5

5
*Jancik v. Redbox Automated Retail, LLC*, 2014 U.S. Dist. LEXIS 67223, at 21-22 (C.D. Cal. May 14, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
6

7
*Jankey v. Lee*, 55 Cal.4th 1038, 1045, 150 Cal. Rptr. 3d 191, 290 P.3d 187 (2012) . . . . . 12

8
*Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 854, 31 Cal. Rptr. 3d 565, 115 P.3d 1212 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9
*Konkol v. Oakwood Worldwide Local, LLC*, 2015 U.S. Dist. LEXIS 67, at *12-13 (C.D. Cal. Jan. 2, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
10

11
*Krusi v. Bear, Stearns & Co.,*144 Cal.App.3d 664, 679 (1983) . . . . . . . . . . . . . . . . . . . . 19

*Lee v. Bank of Am.*, 218 Cal. App. 3d 914, 920 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . 19
12

13
*Loving v. Princess Cruise Lines, Ltd.*, 2009 U.S. Dist. LEXIS 130477(C.D. Cal. Mar. 5, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
15

16
*Monaghan v. El Dorado Cnty. Water Agency*, 2012 U.S. Dist. LEXIS 14900, at *26 (E.D. Cal. Feb. 6, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

17
*Moore v. Greyhound Bus Lines, Inc.*, 2018 U.S. Dist. LEXIS 114661, at 4 (S.D. Cal. July 10, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
18

19
*Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 668, 94 Cal. Rptr. 3d 685, 208 P.3d 623 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20
*Ouellette v. Viacom*, 2011 U.S. Dist. LEXIS 52570 at *4-5 (D. Mont. Mar. 31, 2011) . . . 4

21
*Rendon v. Valleycrest Prods., Inc*., 294 F.3d 1279, 1283-84 (11th Cir. 2002) . . . . . . . . . . 4

22
*Reycraft v. Lee*, 177 Cal. App. 4th 1211, 1224 (2009) . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

23
*Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949, 958-59 (2007). . . . . . . . . . . . . . . . . . . . . 17

24
*Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1076 (N.D. Cal. 2014) . . . . . . . . . . . . . 10

25
*Salazar v. Eastin,* 9 Cal.4th 836, 857 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

26
*Scarborough v. Brown Group, Inc.*, 935 F. Supp. 954, 964 (W.D. Tenn. 1995) . . . . . . . . 19

27
*Schelb v. Stein* 190 Cal.App.4th 1440, 1448 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28
*Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). . . . . . 3

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944). . . . . . . . 6

*Spokeo, Inc. v. Robins*, _U.S._, p 8, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016). . . 3, 12

*Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) . . . . . . . . . . . 3

*Summers v. Earth Island Inst.*, 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009)14

*Surrey v. TrueBeginnings, LLC* (2008) 168 Cal. App. 4th 414, 419. . . . . . . . . . . . . . . . . 9

*Tat Tohumculuk, A.S. v. HJ Heinz Company,* 2013 U.S. Dist. LEXIS 162592 (E.D.Cal. November 13, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States ex rel. Knapp v. Calibre Sys*., 2011 U.S. Dist. LEXIS 119589, at *14 (C.D. Cal. Oct. 17, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. AMC Entm't, Inc.*, 245 F.Supp.2d 1094, 1100 (C.D. Cal. 2003) . . . . . . . . 5

*Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal. App. 4th 254, 265-66 (2007) . . . . . . 10

*Vigil v. Leavitt*, 381 F.3d 826, 835 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1099 (C.D. Cal. 2015) . . . . . . . . . . . . . . . . 8

*Westbrook v. DTG Operations, Inc.*, 2007 U.S. Dist. LEXIS 14653, at *18-19 (D. Nev. Feb. 28, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) . . . . . . . 4

Statutes

Civil Code § 54.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

Evidence Code § 669 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# INTRODUCTION

Defendant moves to dismiss all causes of action of the Complaint for lack of standing.  Strojnik is a lawyer of significant notoriety in Arizona who is currently suspended from the practice of law in Arizona.[1]  In particular, the Arizona State Bar stated that Strojnik was placed on Interim Suspension on July 11, 2018 because:

> Strojnik filed more than 1,700 complaints in a State Court and more than 160 complaints in a District Court alleging violations of the Americans with Disabilities Act (ADA) and the Arizonans with Disabilities Act (AzDA). In most cases, he would demand $5,000 in attorney's fees, regardless if the business remedied the violation. The cases filed were all very similar, alleging vague and non-specific violations. He collected approximately $1.2 million in settlements, which mainly consisted of attorney's fees.
>
> Strojnik initially claimed he conducted thorough investigations prior to filing lawsuits, but later conceded that he did not know the individuals who did the work, oftentimes contracting them from Craigslist. The time he spent on each case was minimal—preparation and review of complaints would take less than thirty minutes—which led to errors. He swore to have reviewed 10,000 "reports" with pictures of properties submitted by the investigators, however never visited many of the properties.
>
> The State Bar alleged that Strojnik engaged in conduct that has caused, or is likely to cause, immediate and substantial harm to clients, the public, or the administration of justice. A District Court said his tactics were extortionate. The Bar moved for the interim suspension and argued that he would continue filing lawsuits irrespective of rulings by other courts.

*Id.*  Strojnik, along with his son, Peter K. Strojnik, is a serial, high volume Americans with Disabilities Act plaintiff, who has filed numerous lawsuits against hotels all over California. *See  Brooke v. The Irvine Company, LLC,* 2016 U.S. Dist. LEXIS 194454 (C.D. Cal. Oct. 7, 2016) (noting that during 2016 Strojnik had filed more than 150 cases in the Central District alone).

Plaintiff's Complaint was filed on April 18, 2019*,* alleging a violation of the ADA based on alleged "website access" claims.  However, Strojnik lacks standing to bring claims under either section of the Unruh Act on his "website accessibility" claims, since he alleges that any potential discrimination occurred when he viewed Defendant's website from his

---

[1]

https://www.azbar.org/newsevents/newsreleases/2018/07/interimsuspension-peterstrojnik/

home in Maricopas County, Arizona. Complaint, ¶ 3.  As numerous cases hold, there is no extraterritorial application of the Unruh Act, and specifically no protection for out-of-state plaintiffs viewing a website from outside of California.

He fails to state a claim under the ADA for "website accessibility" as the hotel's website is not a "public accommodation" under the ADA, there is insufficient nexus between the website and any alleged discrimination, and the Department of Justice ("DOJ") interpretations of its ADA regulations clearly state that (1) alternative methods of reserving a room, such as a 24/7 telephone line are satisfactory, (2) the DOJ has revoked its proposed rule-making regarding website accessibility, and (3) has explicitly informed Congress that technical non-compliance with website regulations was never intended to be a violation of the ADA.[2]

Strojnik has never visited the hotel and therefore did not actually experience any alleged "barriers."  Strojnik's negligence claim fails because (1) the hotel owed no duty at all to a non-guest, (2) Strojnik did not suffer any cognizable damages by viewing a website and (3) the Negligence claim is based entirely on "knowing and intentional" conduct.  In addition, if Strojnik lacks standing under the ADA, there is no basis for supplemental jurisdiction over the state Unruh Act claims or her negligence claim.

All of Strojnik's ADA claims are also defective as his vague allegations of an intent to stay at a hotel in northern California at some point in the future are insufficient as a matter of law to establish the "imminent injury" element of Article III standing. Accordingly, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## ARGUMENT

## I.

## STROJNIK LACKS STANDING OR FAILS TO STATE A CLAIM UNDER THE

---

[2]  Strojnik's claims of alleged "disability" are also suspect and by no means acknowledged as having any validity here.

## ADA FOR ALLEGED WEBSITE ACCESSIBILITY

A disabled person claiming access discrimination in violation of the ADA must establish Article III standing in order to maintain their lawsuit. *Chapman v. Pier 1 Imports, Inc.,* 631 F.3d 939, 946 (9th Cir. 2011). Article III standing requires that a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, _U.S._, p 8, 136 S.Ct. 1540, 1548, 194 L.Ed.2d 635 (2016), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiff has the burden of establishing the existence of these three elements, and must clearly allege facts demonstrating each element. *Id*.

"To establish standing to pursue injunctive relief under the ADA, a plaintiff must also "demonstrate a 'real and immediate threat of repeated injury' in the future." *Brooke v. H&K P'ship*, 2016 U.S. Dist. LEXIS 148572, at 5 (E.D. Cal. Oct. 26, 2016) citing *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Because its jurisdiction is limited, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)).

A.    Strojnik Cannot Show An Injury In Fact.

1.    **Strojnik Encountered No Barrier To The Use Of Defendant's Facilities.**

An "injury in fact" must be "concrete and particularized" and "actual or imminent," not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. This includes a "requirement that a party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). The injury in fact element is met when a disabled plaintiff has personally encountered a barrier violating the ADA. *Chapman*, 631 F.3d at 947 (citing *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir. 2008)). In his First Cause of Action, Plaintiff merely alleges that when he went to reserve an ADA-accessible room, he reviewed *pictures* on the website. Complaint, ¶ 21. He does not allege that he was *unable* to reserve such a room. *Id*. "To

survive a motion to dismiss, Plaintiff must claim an actual (not hypothetical) impediment to the use of Defendant's retail location." *Gomez v. Bang & Olufsen Am., Inc.*, 2017 U.S. Dist. LEXIS 15457, *12-13 (S.D. Fla. Feb. 2, 2017)(website did not impede use of physical facilities).

### 2.    **Defendant's Website Is Not A Public Accommodation.**

Title III of the ADA prohibits discrimination in "public accommodations." In order to state a discrimination claim under Title III, a plaintiff must show among other things, that "the plaintiff was denied a public accommodation by the defendant because of his disability." *Ariz. ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010).

The Ninth Circuit has applied the "narrow definition of 'place of public accommodation,'" holding that a "place of public accommodation" under the ADA is limited to "an actual physical place." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012) quoting *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). *See also, Rendon v. Valleycrest Prods., Inc.*, 294 F.3d 1279, 1283-84 (11th Cir. 2002)(Congress' clear intent is that Title III of the ADA governs solely access to physical, concrete places of public accommodation).

A website is not a place of public accommodation. *Jancik v. Redbox Automated Retail, LLC*, 2014 U.S. Dist. LEXIS 67223, at 21-22 (C.D. Cal. May 14, 2014); *Anderson v. Macy's Inc.*, 2012 U.S. Dist. LEXIS 108569 at *4 (W.D. Pa. Aug. 2, 2012); ("Since a website is not a physical accommodation, the Title III claim against Macy's Online must be dismissed."); *Ouellette v. Viacom*, 2011 U.S. Dist. LEXIS 52570 at *4-5 (D. Mont. Mar. 31, 2011) (holding a website by itself is not a physical place and the plaintiff did not allege a sufficient connection between the website and a physical structure); *Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002) (granting defendant's motion to dismiss because plaintiff failed to establish a nexus between southwest.com and any restriction on the full enjoyment of a physical, concrete place of public accommodation). "While there is some disagreement amongst district courts on this question, it appears that

1   the majority of courts agree that websites are not covered by the ADA unless some function

2   on the website hinders the full use and enjoyment of a physical space." *Gomez*, 2017 U.S.

3   Dist. LEXIS 15457, *6-9 (S.D. Fla. Feb. 2, 2017).

4        As the Court stated in *Gomez*, and which is especially apt here,

5        Plaintiff's grievance seems to be that Defendant's website does not provide a
         blind person with the same online-shopping experience as non-disabled
6        persons. *However, the ADA does not require places of public accommodations
         to create full-service websites for disabled persons*. In fact, the ADA does not
7        require a place of public accommodation to have a website at all. All the ADA
         requires is that, if a retailer chooses to have a website, the website cannot
8        impede a disabled person's full use and enjoyment *of the brick-and-mortar
         store*. To survive a motion to dismiss, Plaintiff must claim an actual (not
9        hypothetical) impediment to the use of Defendant's retail location.

10   *Gomez*, 2017 U.S. Dist. LEXIS 15457, *12-13 (S.D. Fla. Feb. 2, 2017) (emphasis added).

11        In another similar case, *Haynes v. Genesco, Inc.*, 2018 U.S. Dist. LEXIS 5939, at *5

12   (S.D. Fla. Jan. 11, 2018), the plaintiff contended that the website itself is a public

13   accommodation and an extension of Defendant's stores. "Plaintiff does not, however, allege

14   that the partially-inaccessible website impedes his access to Defendant's physical stores. In

15   the absence of such allegations, Plaintiff has failed to state a violation of Title III." *Id.*

16        Similarly, in this case, Strojnik does not allege that the website has a substantial

17   nexus to the hotel itself, nor does he allege that he was prevented from using the

18   Defendant's hotel because he allegedly was unable to reserve an ADA-compliant hotel

19   room.  Strojnik was perfectly free to call the hotel, email the hotel, speak to a reservations

20   operator or simply arrive at the hotel in person and request an ADA accessible room.  Not

21   having an ADA-compliant hotel room available on the Defendant hotel's website is no

22   impediment to Strojnik's use of the hotel, and his First Cause of Action therefore does not

23   allege a violation of the ADA pursuant to Fed. R. Civ. P. 12(b)(6) and therefore fails to

24   allege an injury in fact to establish Article III standing.

25        3.   **The DOJ Has Opined That The Regulations Only Require A "Place Of**

26             **Public Accommodation" To Provide Reasonable Alternatives.**

27        The DOJ is the agency charged with enforcing Title III and promulgating regulations

28   implementing it. *United States v. AMC Entm't, Inc.*, 245 F.Supp.2d 1094, 1100 (C.D. Cal.

2003).  The DOJ has stated that "covered entities with inaccessible Web sites may comply with the ADA's requirement for access by providing an accessible alternative, such as a staffed telephone line, for individuals to access the information, goods, and services of their Web site." Nondiscrimination on the Basis of Disability, 75 Fed. Reg. at 43466.  *Gorecki v. Dave & Buster's, Inc.*, 2017 U.S. Dist. LEXIS 187208, at *14 (C.D. Cal. Oct. 10, 2017); *see also*, https://www.ada.gov/websites2.htm ("An agency with an inaccessible website may also meet its legal obligations by providing an alternative accessible way for citizens to use the programs or services, such as a staffed telephone information line.").

DOJ's views "are entitled to so-called *Skidmore* deference insofar as they 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Vigil v. Leavitt*, 381 F.3d 826, 835 (9th Cir. 2004) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)); *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)(an agency's interpretation of its own regulation is entitled to deference).  Interpretations contained in formats such as opinion letters are "entitled to respect" under *Skidmore*, but only to the extent that those interpretations have the "power to persuade." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1663 (2000).  As recently as September 25, 2018, the DOJ wrote a letter to Congress in response to a Congressional inquiry stating that

> Absent the adoption of specific technical requirements for websites through rulemaking, public accommodations have flexibility in how to comply with the ADA's general requirements of nondiscrimination and effective communication. Accordingly, noncompliance with a voluntary technical standard for website accessibility does not necessarily indicate noncompliance with the ADA.

https://www.adatitleiii.com/wp-content/uploads/sites/121/2018/10/DOJ-letter-to-congress.pdf.

Thus, even an inaccessible or only partially accessible website is not a violation of the ADA and its regulations if the defendant has provided an accessible alternative, such as a telephone reservation desk, etc., Plaintiff's First Cause of Action under the ADA based on allegedly inadequate website access therefore fails to state a claim and Plaintiff has failed to

1  establish standing to assert his First Cause of Action.

2  B.    There Is No Causal Connection Between Any Alleged "Injury" And Defendant's

3        Conduct.

4        Plaintiff's First Cause of Action therefore does not allege an injury that is causally

5  related to Plaintiff's purported "injury."  Plaintiff merely claims that the website did not

6  show any availability of ADA-compliant rooms.  However, the purported injury here is that

7  he was unable to rent a room online.  He does not allege that he called the hotel, or availed

8  himself of any of the alternatives to reserving a room online.  Therefore his injury is not

9  causally related to Defendant's website at all and he cannot establish the second element of

10 standing.[3]

11                                        **II.**

12  **STROJNIK LACKS STANDING PURSUANT TO CALIFORNIA'S UNRUH ACT**

13       **TO BRING HIS SECOND AND THRID CAUSES OF ACTION**

14       Strojnik lacks standing under the Unruh Act, Civil Code § 51 *et seq.* for three simple

15  reasons.[4]

16  A.    The Unruh Act Does Not Apply To Alleged Discrimination Suffered By Parties

17        Outside California.

18       Strojnik is a resident of Maricopa County, Arizona. Complaint, ¶ 3.  Because he was

19  merely viewing websites from Arizona, he suffered no actual discrimination in California.

20

21       [3]  The First Cause of Action also suffers from the same standing defects as briefed

22  more fully in connection with Plaintiff's structural access claims, such as (1) whether his

23  attempt to avail himself of the goods and services of the hotel was *bona fide* or – as is

24  significantly more likely given the number of lawsuits he has filed – just a money-making

25  scheme to set the hotel up for an ADA claim and (2) whether he has a *bona fide* intention to

26  rent a room at defendant's hotel in the future. *See Brooke v. Peterson*, 185 F. Supp. 3d

27  1203, 1209-10 (C.D. Cal. 2016); *Advocates for Individuals with Disabilities LLC v. WSA

28  Props. LLC*, 210 F. Supp. 3d 1213, 1223 (D. Ariz. 2016).

        [4]  Because Strojnik only viewed the website to support all of his claims, since he
never went to the hotel, he lacks standing to bring all of the causes of action.

The Unruh Act only applies to "[a]ll persons within the jurisdiction of this state." Civ. Code, § 51 (emphasis added). As the court held in *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1099 (C.D. Cal. 2015):

> It has "limited geographic scope" and does not apply to alleged discrimination suffered by parties outside California. *Tat Tohumculuk, A.S. v. HJ Heinz Company* (2013) WL 6070483 at 7, [2013 U.S. Dist. LEXIS 162592 (E.D.Cal. November 13, 2013)] ["Plaintiff has not presented any case law, nor is the court aware of any, applying section 51 to alleged discrimination suffered by parties outside California. The Unruh Act, therefore, does not apply."]; *see also Archibald v. Cinerama Hawaiian Hotels, Inc.* (1977) 73 Cal.App.3d 152, 159.

*See also, Moore v. Greyhound Bus Lines, Inc.*, 2018 U.S. Dist. LEXIS 114661, at 4 (S.D. Cal. July 10, 2018)("jurisdiction of the [Unruh] Act is expressly limited to violations taking place in California, therefore, the 'Act does not apply to this action because the alleged discrimination occurred outside of California (in Denver, Colorado) and it is therefore outside of the extraterritorial reach of the statute.'"); *Tat Tohumculuk, A.S. v. HJ Heinz Company,* WL 6070483 at 7, 2013 U.S. Dist. LEXIS 162592 (E.D.Cal. November 13, 2013); *Keum v. Virgin Am. Inc.*, 781 F.Supp.2d 944, 955 (N.D. Cal. 2011) ("The Unruh Act only applies to discrimination that takes place within California's jurisdiction"); *Loving v. Princess Cruise Lines, Ltd.*, 2009 U.S. Dist. LEXIS 130477(C.D. Cal. Mar. 5, 2009), at 8 ("Plaintiffs' state law claims also do not have extraterritorial reach. It is well-settled that the Unruh Act applies only within California"). Since Strojnik only viewed the allegedly non-compliant website from Arizona, Strojnik lacks standing pursuant to the Unruh Act, which is incapable of correcting by amendment. Accordingly, the Second Cause of Action should be dismissed with prejudice.

B.    <u>Strojnik Never Was Denied Lodging.</u>

Standing under Civil Code § 54.3 of the DPA is established where a disabled plaintiff can show he or he actually presented himself or herself to a business or public place with the intent of purchasing its products or utilizing its services in the manner in which those products and/or services are typically offered to the public and was actually denied equal access on a particular occasion. *Reycraft v. Lee*, 177 Cal. App. 4th 1211, 1224

(2009).   Thus, Strojnik must demonstrate that he *actually presented himself* to the defendant's hotel and was denied access.  However, Strojnik alleges that he never went to the hotel and therefore could not have been denied access on a particular occasion.

"[T]he cases interpreting the Act have consistently held that an individual plaintiff has standing to bring claims thereunder only if he or he has been the victim of the defendant's discriminatory act." *Surrey v. TrueBeginnings, LLC* (2008) 168 Cal. App. 4th 414, 419.  *Surrey* is directly on point and dispositive.

In *Surrey,* the Court stated:

> The critical issue in this appeal is whether someone who presents himself or herself to a business with the intent of purchasing its services or products, but becomes aware of that business's practice of charging different amounts for such services or products based on gender and thereafter does not purchase those services or products, is aggrieved by that practice so as to have standing to sue for violations of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.; the Act) . . . . we answer this question in the negative and adopt a bright-line rule that a person must tender the purchase price for a business's services or products in order to have standing to sue it for alleged discriminatory practices relating thereto.

*Id.* at 416.  *Surrey* involved a plaintiff who observed a posted policy on an online dating website offering free memberships only to women, but charging men for the same memberships.  Seeing this policy, Surrey did not purchase a membership but instead filed suit under the Unruh Act.  *Id.* at 417. "Because he did not attempt to or actually subscribe to TrueBeginnings's services, Surrey did not suffer discrimination in any sense other than 'in the abstract. Thus, . . . he lacks standing to seek relief (whether damages or injunctive relief) for violations of the [Unruh] Act and the Gender Tax Repeal Act." *Id.* at 420.

In this case, as set forth in the Complaint and as in *Surrey*, Strojnik has merely viewed Defendant's website, never actually visited the hotel, never called the hotel or attempted to obtain lodging in any way other than view a website online nor did the defendant actually deny his ADA-compliant lodging.  Complaint, ¶ 25.  Accordingly, Strojnik also lacks standing pursuant to *Surrey's* "bright line" for her claims under the Second and Third Causes of Action alleging "website access" claims.

C.      Strojnik's Second Of Action Fails To State A Claim.

1    Standing to pursue monetary relief under the DPA or the Unruh Act is different from

2    standing to seek injunctive relief under federal or state law. *See Reycraft*, 177 Cal. App.4th

3    1211 (2009). Both state statutes restrict damages recovery to situations where "the plaintiff

4    personally encountered the violation on a particular occasion, or the plaintiff was deterred

5    from accessing a place of public accommodation on a particular occasion." *Rodriguez v.

6    Barrita, Inc.*, 10 F.Supp. 3d 1062, 1076 (N.D. Cal. 2014).  Unlike the ADA, these statutes

7    require "something more than mere awareness of or a reasonable belief about the existence

8    of a discriminatory condition." *Id.*

9    For example, a plaintiff cannot recover damages unless the violation actually denied

10   him or her equal access to some public facility. *Urhausen v. Longs Drug Stores Cal., Inc.*,

11   155 Cal. App. 4th 254, 265-66 (2007). In *Urhausen*, the court rejected the plaintiff's

12   attempt to equate a "denial of equal access" with the presence of a violation of federal or

13   state regulations.  As the court held, under that theory,

14       any disabled person could sue for statutory damages whenever he or he
15       encountered noncompliant facilities, regardless of whether that lack of
         compliance actually impaired the plaintiff's access to those facilities. Plaintiff's
16       argument would thereby eliminate any distinction between a cause of action
         for equitable relief under section 55 and a cause of action for damages under
17       section 54.3 . . .

18   *Id.*

19   In Strojnik's Second and Third Causes of Action, Strojnik cannot allege that the

20   purported lack of availability of an ADA-accessible room actually impaired his ability to

21   access defendant's hotel.  *See* Complaint, ¶ 16-21.  In fact, the most that Strojnik alleges is

22   that he attempted to reserve an ADA- accessible room online, but none were available.  *Id.*

23   For example, he does not allege that he attempted to call the hotel, email the hotel, or any

24   number of easily accessible alternatives to access Defendant's facilities, nor does he

25   plausibly allege that he was actually attempting to patronize Defendant along with the other

26   hotels that he has sued in San Fransisco area at the same time, for the same purported visit.

27   Since Strojnik does not allege that the lack of availability of an ADA-accessible

28   room on his vague statement that "Plaintiff intended to visit the Santa Monica area" with no

1    dates mentioned whatsoever *actually impaired* his ability to access Defendant's hotel, nor

2    does the lack of availability of such a room on her purported dates of travel plausibly lead

3    to the conclusion that there are no such rooms at all, Strojnik does not have either standing

4    or state a claim under the Unruh Act pursuant to the Second Cause of Action.

5         Moreover, a violation of the Unruh Act may be maintained independent of an ADA

6    claim only where a plaintiff pleads "intentional discrimination in public accommodations in

7    violation of the terms of the Act." *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 668, 94 Cal.

8    Rptr. 3d 685, 208 P.3d 623 (2009). To prove intentional discrimination there must be

9    allegations of "willful, affirmative misconduct," and the plaintiff must allege more than the

10   disparate impact of a facially neutral policy on a particular group. *Koebke v. Bernardo*

11   *Heights Country Club*, 36 Cal. 4th 824, 854, 31 Cal. Rptr. 3d 565, 115 P.3d 1212 (2005);

12   *Cullen*, 880 F. Supp. 2d at 1024.

13        There are no such plausible allegations of "willful, affirmative misconduct" in the

14   Second Cause of Action.

15                                          **III**.

16   **STROJNIK DOES NOT HAVE A SEPARATE CLAIM UNDER THE UNRUH ACT**

17        **FOR THE IDENTICAL CONDUCT THAT IS THE BASIS OF STROJNIK'S**

18                       **DISABLED PERSONS ACT CLAIM**

19        Strojnik alleges what would be either a violation of the Unruh Act, Civil Code § 51,

20   or, for the same conduct, a violation of the more specific part of the Unruh Act commonly

21   known as the Disabled Persons Act, Civil Code § 54 *et seq*. ("DPA").

22        While the Unruh Act provides broad civil rights protection in housing and business

23   establishments to individuals in all protected classifications, the DPA is more narrowly

24   tailored to "guarantee individuals with disabilities equal access to public places . . . and

25   services, as well as . . . housing and places of public accommodation." *Munson v. Del*

26   *Taco, Inc.,* 46 Cal.4th at 674 (2009), n. 8. The DPA similarly "specifies remedies for

27   violations of these guarantees . . . ." *Id.* "Recognizing the overlap between the Unruh Civil

28   Rights Act and the Disabled Persons Act, the Legislature expressly foreclosed double

1    recovery." *Jankey v. Lee*, 55 Cal.4th 1038, 1045, 150 Cal. Rptr. 3d 191, 290 P.3d 187
2    (2012); Civil Code § 54.3(c).

3          Well-established principles of statutory interpretation establish that the DPA, and not
4    the general Unruh Act applies.  A specific statutory provision controls over a more general
5    one.  *Salazar v. Eastin,* 9 Cal.4th 836, 857 (1995). "That rule obtains even though the
6    general provision standing alone is sufficiently broad to include the subject to which the
7    statute relates." *Schelb v. Stein* 190 Cal.App.4th 1440, 1448 (2010).   This interpretation of
8    the statutory scheme makes logical sense, as there is no reason that the Legislature would
9    provide a $1,000 statutory penalty *or* a $4,000 statutory penalty *for the same act*.
10   Obviously, any plaintiff would seek the larger $4,000 statutory penalty rather than the
11   $1,000 one.  By foreclosing a double recovery, the reasonable interpretation is that the
12   more specific DPA remedy applies.

13         Since Strojnik's claims fall within the specific provisions of the DPA, his Second and
14   Third Causes of Action under the Unruh Act should be dismissed.

15                                          **IV.**

16   **STROJNIK DOES NOT HAVE STANDING TO ASSERT CLAIMS UNDER THE**
17                                          **ADA**

18   A.    <u>Standing Requirements Under The ADA For Any Claims</u>.

19         Strojnik also lacks standing pursuant to the ADA for his claims for lack of standing
20   for lack of an "imminent injury."  Article III standing requires that a plaintiff must have (1)
21   suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the
22   defendant, and (3) that it is likely to be redressed by a favorable judicial decision. *Spokeo,*
23   *Inc.*, _U.S._, p. 8, 136 S.Ct. 1540, 1548. "To establish standing to pursue injunctive relief
24   under the ADA, a plaintiff must also "demonstrate a 'real and immediate threat of repeated
25   injury' in the future." *Brooke v. H&K P'ship*, 2016 U.S. Dist. LEXIS 148572, at 5 (E.D.
26   Cal. Oct. 26, 2016).

27   B.    <u>Strojnik Does Not Allege An "Imminent Injury."</u>

28         In issuing an Order to Show Cause *re* Brooke's standing under the ADA in *Brooke v.*

1    *RK Inv. Props.*, 2018 U.S. Dist. LEXIS 9120, at 3 (N.D. Cal. Jan. 19, 2018), the District

2    Court stated:

> Plaintiff Brooke*, using attorney Peter Kristofer Strojnik*, has filed over 130
> ADA cases in the Northern District in the past two years, in addition to
> hundreds of cases filed in the Central, Eastern, and Southern Districts of
> California. The defendants in the cases appear to typically be non-chain (*e.g.*,
> individually or small group-owned and operated) hotels and motels. The vast
> majority of the cases filed in this District have been resolved by voluntary
> dismissal by plaintiff, usually after having filed a notice of settlement. . . .
> However, Strojnik's filing of so many hundreds of suits against hotels and
> motels over the past few years *all over California*, despite living in Arizona,
> calls into question her intent and ability to visit these facilities in general. In
> this case, I wonder about her intent and ability to visit the Imperial Inn in
> Oakland, California in the future. Perhaps plaintiff and her husband indeed
> spend hundreds of days a year travelling all over California and on those trips
> visit numerous motels and hotels to check for ADA compliance. But the
> geographic scope of her filings and the frequency of them calls her intent and
> thus her standing into question.

*Id. See also*, *Brooke v. Newport Hotel Holding LLC*, 2016 U.S. Dist. LEXIS 187101, at 9

n.3 (C.D. Cal. Apr. 29, 2016)("Ms. Brooke alleges in every one of her many lawsuits that

"in fact she will lodge" at each hotel which installs a pool lift. . . .Given the number of

lawsuits he has filed, the Court views this representation with considerable skepticism.");

*Brooke v. DS Hospitality, LLC,* Case No. 16-cv-06750-VC (N.D.Cal. Dec. 15,

2016)(cataloging *Brooke* cases throughout California and issuing Order to Show Cause re

lack of standing).[5]

_____

[5]    As Judge Chhabria noted in *Brooke v. DS Hospitality, LLC,* Case No. 16-cv-06750-VC (N.D.Cal. Dec. 15, 2016), "in the course of ten months in 2016, Strojnik stated in complaints filed all over California that he had plans in the near future to visit hotels in Napa, American Canyon, Union City, Newark, Milpitas, Santa Clara, San Jose, Campbell, Cupertino, Los Gatos, Gilroy, Salinas, Dixon, Davis, Woodland, West Sacramento, Sacramento, Elk Grove, Roseville, Stockton, Modesto, Turlock, Merced, Fresno, Clovis, Hanford, Visalia, Tulare, Bakersfield, San Luis Obispo, Oxnard, Port Hueneme, Simi Valley, Valencia, Stevenson Ranch, Westlake Village, Agoura Hills, Glendale, Pasadena, Arcadia, Monrovia, Azusa, San Dimas, Diamond Bar, Pomona, Ontario, Rancho Cucamonga, Fontana, Rialto, Bloomington, Riverside, Corona, Banning, Huntington Beach, Anaheim, Orange, Costa Mesa, Newport Beach, Laguna Beach, San Juan Capistrano, Dana Point, San Clemente, Palm Springs, Cathedral City, Palm Desert, La Quinta, Indio, and Blythe. *Brooke v. RK Inv. Props.*, No. 17-cv-06034-WHO, 2018 U.S.

1    Ordering that Ms. Brooke provide specific, concrete information about her travel

2  plans in the recent past and the near future, the Court held:

3       This information is necessary for the Court to determine plaintiff's standing in
        this case, in particular the "evidence of concrete travel plans" to show "that a
4       disabled plaintiff intends to visit a facility" in near future. *Civil Rights
        Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d
5       1093, 1100 (9th Cir. 2017); see also *id.* at 1100 (approving of the approach in
        *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335-37 (11th Cir.
6       2013), requiring courts to assess various factors 'in determining whether
        plaintiff suing under ADA Title III was likely to actually visit the facility in
7       future, including prior visits, proximity of residence to store, plans for future
        visits, and status as an 'ADA tester who has filed many similar lawsuits'").

8  *Brooke v. RK Inv. Props.,* No. 17-cv-06034-WHO, 2018 U.S. Dist. LEXIS 9120, at 3 (N.D.

9  Cal. Jan. 19, 2018).

10     In order for an ADA plaintiff to allege an injury that is imminent, he must express

11 more than a "vague desire to return" to the accommodation's location. *Summers v. Earth

12 Island Inst.*, 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009).  Absent a "firm

13 intention to visit" the location, the plaintiff has not alleged facts "to satisfy the requirement

14 of imminent injury[.]" *Id.*  In other words, "'some day' intentions—without any description

15 of concrete plans, or indeed even any specification of *when* the some day will be—do not

16 support a finding of the 'actual or imminent' injury that [Supreme Court] cases require."

17 *Brooke v. Choice Hotels Int'l, Inc.*, 2016 U.S. Dist. LEXIS 60062, at pp. 7-8 (S.D. Cal. May

18 5, 2016)[6] citing *Lujan*, 504 U.S. at 564 (emphasis in original). "General statements

19 regarding Plaintiff's intent to travel to an area . . . are insufficient to allege an 'actual and

20

21 _____

22 Dist. LEXIS 9120, at p.5 n.2 (N.D. Cal. Jan. 19, 2018) citing *Brooke v. DS Hospitality LLC,*
   Case No. 16-06750-VC, Dkt. No. 9 at 1-3.

23
24    [6]  In *Choice Hotels Int'l,* Ms. Brooke alleged that "she 'has frequented the [San
   Diego] area in the past' and 'has several planned personal and business trips to the [San
25 Diego] area in the coming months and for the indefinite future in light of new business
   developments in which she recently became involved.' (FAC, ¶ 29.) She further states she
26 'in fact [] will lodge at Defendant's hotel if and when the barriers are removed." Plaintiff
   elsewhere alleges he 'intends' or 'wishes' to travel to San Diego 'in the future.'" Those
27 more specific allegations than the ones here were insufficient to establish standing and the
   Court dismissed the action.
28

1    imminent' injury." *Brooke v. Choice Hotels Int'l, Inc.*, 2016 U.S. Dist. LEXIS 60062, at

2    *7-8 (S.D. Cal. May 5, 2016) citing *Summers*, 555 U.S. at 493.

3         In the ADA context, courts evaluate the possibility of *future* harm by assessing the

4    likelihood a plaintiff will *again* visit the premises at issue.[7] Consistent with these Ninth

5    Circuit opinions, some district courts have examined the following factors to determine

6    whether a plaintiff's likelihood of returning to a place of public accommodation is

7    sufficient to confer standing: "(1) the proximity of defendant's business to plaintiff's

8    residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of

9    plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Brooke*

10   *v. Choice Hotels Int'l, Inc.*, 2016 U.S. Dist. LEXIS 60062, at 7-8 (S.D. Cal. May 5, 2016);

11   *See also, D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008)

12   (finding actual or imminent injury sufficient to establish standing where a plaintiff

13   demonstrated an intent to return and desire to visit the accommodation if it were made

14   accessible with reference to specific past and future trips).

15        In this case, the same concerns as those expressed by the courts in the many other

16   *Brooke* cases apply with equal force.  First, it is questionable whether Strojnik's allegations

17   of visiting hotels in the San Francisco area are plausible. He claims that when he could not

18   reserve a room online at Defendant's hotel, he did not even bother to find another hotel in

19   Santa Monica area.  Complaint, ¶ 15. "Deterred, Plaintiff therefore will not book a room or

20   lodge at Defendant's hotel until it modifies its policies and procedures regarding its

21   website," Complaint, ¶ 11; and "Plaintiff intends to visit Defendant's Hotel at a specific

22   time when the Defendant's noncompliant Hotel becomes fully compliant with ADAAG,"

23   Complaint, ¶ 12 (emphasis added).

24        Second, although Strojnik alleges that he intends to return, and is deterred from

25   staying at Defendant's hotel, it is again implausible. In light of the many other hotels being

26

27   ───────────────

28        [7] Of course, Strojnik must have initially visited the hotel in order to experience the
     alleged structural barriers undergirding all of his ADA and Unruh Act claims.

1   concurrently sued, not identifying *which* of the several hotels he is currently suing in San

2   Francisco area at which Strojnik intends to stay falls far short of the type of evidence

3   sufficient to establish ADA standing.

4   C.   <u>Strojnik Fails To Establish That He Personally Suffered An "Injury In Fact."</u>

5        Plaintiff must suffer an "injury in fact" to invoke Article III standing. However,

6   Plaintiff cannot establish that he visited Defendant's hotel or encountered a barrier there.

7   Without such allegations, "Plaintiff's injury is not 'particularized and concrete' . . . [or]

8   'actual or imminent.'" *Brooke v. Peterson*, 185 F. Supp. 3d at 1210 ("Binding precedent

9   supports that under any theory of standing, including the deterrent effect doctrine, an ADA

10  plaintiff must have previously visited a noncompliant place of accommodation to have an

11  injury-in-fact under Article III."). Otherwise,

12       Under this theory, a disabled person in Arizona could learn of an architectural
13       barrier at a facility in Tennessee which the person has never visited and never
         plans to visit, and yet would suffer an injury-in-fact by the mere knowledge.
14       Such an injury, if it could be called an injury at all, would not be concrete,
         particularized, actual, or imminent. And even if the person firmly resolved that
15       he would never visit the Tennessee facility because of the barrier, any future
         injury from the barrier would be purely hypothetical.

16  *Advocates for Individuals with Disabilities LLC v. WSA Props. LLC*, 210 F. Supp. 3d 1213,

17  1218-19 (D. Ariz. 2016).

18       "It appears that every district court in California to address whether a plaintiff who

19  has not visited the defendant hotel can have standing pursuant to the ADA" based on

20  photographs or calling the hotel has held that a plaintiff, and in particular, Strojnik, does

21  not. *Brooke v. Capitol Regency LLC*, 2017 U.S. Dist. LEXIS 75428 (E.D.Cal. May 17,

22  2017); *Brooke v. Peterson*, 185 F.Supp.3d at 1207-10, 1213 (dismissing four related

23  complaints for failure to allege an injury in fact based on "call and confirm"); *Brooke v.*

24  *H.P. Hospitality, LLC*,  2017 U.S. Dist. LEXIS 214372 (C.D.Cal. July 11, 2017)(phone call

25  to defendant hotel did not confer standing); *Brooke v. Capitol Regency LLC*, 2017 U.S.

26  Dist. LEXIS 75428 at *3 (E.D. Cal. May 17, 2017); *Brooke v. Pacific Gateway Ltd.*, 2017

27  U.S. Dist. LEXIS 70957 (S.D. Cal. May 9, 2017)("In sum, the Court finds Plaintiff['s]

28  reliance on a telephone call and report of an independent agent insufficient to confer

standing."); *Brooke v. Newport Hotel Holding LLC*, 2016 U.S. Dist. LEXIS 187101 (C.D. Cal. Apr. 29, 2016)(photographs taken by an agent of plaintiff insufficient to confer standing).

Because Strojnik's standing in this case is exclusively based on allegedly visiting Defendant's hotel – which he did not do, Strojnik lacks Article III standing to assert an ADA claim and the Complaint should be dismissed for lack of standing.

## VI.

## PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED FOR FAILING TO STATE A CLAIM OR FOR LACK OF SUPPLEMENTAL JURISDICTION

The essential elements of a negligence claim are that: (1) the defendant was negligent; (2) the plaintiff was harmed; and (3) the defendant's negligence was a substantial factor in causing plaintiff's harm. California Civil Jury Instructions ("CACI") 400. Although Plaintiff does not identify her negligence cause of action as "negligence per se," the allegations of negligence are based solely on the alleged violations of the ADA and/or Unruh Act.

The negligence per se presumption, however, operates only to establish a lack of due care. "The presumption of negligence created by Evidence Code § 669 concerns the standard of care, rather than the duty of care." *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949, 958-59 (2007). "[A]n underlying claim of ordinary negligence must be viable before the presumption of negligence of Evidence Code section 669 can be employed. … '[I]t is the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to recover civil damages. …'" *Id.* citing *California Service Station etc. Assn. v. American Home Assurance Co.* 62 Cal.App.4th 1166, 1178 (1998).

A.   There Is No Viable Negligence Claim.

Strojnik does not allege any violation of a duty of care that was a substantial factor in causing Plaintiff's harm.  Strojnik only alleges that "Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation."  Complaint, ¶ 48, and that "Defendant

1 breached this duty." Complaint, ¶49.  However, the violation of a statute is only evidence

2 of the standard of care, *not* the duty of care.  Strojnik must first allege that there was a duty

3 of care that was breached to state a viable negligence claim.

4 　　　Second, Strojnik repeatedly alleges that Defendant's conduct in failing to remove the

5 "ADA accessibility barriers" was "knowing and intentional." Complaint, ¶¶ 55, 57.

6 Intentional conduct cannot support a claim of negligence.  *United States ex rel. Knapp v.*

7 *Calibre Sys.*, 2011 U.S. Dist. LEXIS 119589, at *14 (C.D. Cal. Oct. 17, 2011); *Monaghan*

8 *v. El Dorado Cnty. Water Agency*, 2012 U.S. Dist. LEXIS 14900, at *26 (E.D. Cal. Feb. 6,

9 2012).

10 　　　Third, Strojnik cannot demonstrate that he has personally suffered any harm from the

11 alleged failure to remove any hypothetical barriers *because he never went to the hotel* and

12 never even tried to rent a room.  Therefore, he is no more than a stranger in another state to

13 whom this Defendant owes *no* duty of care, and who could not have suffered any harm.

14 B.　　Negligence Cannot Be Based On The ADA.

15 　　　Even assuming that Strojnik had stated a negligence claim, the ADA does not

16 establish the applicable standard of care.  "Whether a particular statute, administrative

17 regulation or local ordinance is utilized to define the standard of care in a negligence action

18 is clearly a question of law to be determined exclusively by the court." *Westbrook v. DTG*

19 *Operations, Inc.*, 2007 U.S. Dist. LEXIS 14653, at *18-19 (D. Nev. Feb. 28, 2007).  Under

20 either the ADA or the Unruh Act, there are no accessibility guidelines that if not met are

21 per se unreasonable or that constitutes a per se barrier under the ADA Guidelines.  *Guerra*

22 *v. W. L.A. Coll.*, 2018 U.S. Dist. LEXIS 141029, at *19-20 (C.D. Cal. Aug. 20, 2018).  The

23 ADA does not fall under the class of statutes that serve as a predicate for negligence per se.

24 *Westbrook v. DTG Operations, Inc.*, 2007 U.S. Dist. LEXIS 14653, at *18-19 (D. Nev. Feb.

25 28, 2007)(applying Nevada law); *Scarborough v. Brown Group, Inc.*, 935 F. Supp. 954,

26 964 (W.D. Tenn. 1995)(finding that Title VII is not the type of law encompassed under

27 negligence per se because such claims may be supported only by statutes and regulations

28 relating to public safety, such as health regulations and rules of the road.).  As the court

1   held in *Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal. App. 4th 254, 267 (2007),

2   rejecting the application of negligence per se:

>   Although there was no dispute, at least on the motions for judgment on the
>   pleadings, that the disabled accessible parking space did not satisfy applicable
>   slope regulations, "[n]ot every infraction of a statute will result in civil
>   liability." (*Nunneley v. Edgar Hotel* (1950) 36 Cal.2d 493, 497 [225 P.2d 497]
>   (Nunneley).

6   In light of Plaintiff's failure to establish that Defendant has denied him access to

7   Defendant's facilities or that he even has a viable "structural accessibility" claim pursuant

8   to the ADA, Plaintiff has not sufficiently alleged that Defendant was negligent and the

9   Fourth Cause of Action should be dismissed with prejudice. *Guerra v. W. L.A. Coll.*, 2018

10   U.S. Dist. LEXIS 141029, at *34-35 (C.D. Cal. Aug. 20, 2018).

11   C.   <u>Plaintiff's Request For Punitive Damages Should Be Stricken.</u>

12   In connection with her Sixteenth Cause of Action, Strojnik seeks punitive damages.

13   Punitive damages are not available for negligence.  Complaint, ¶ 66.  For any cause of

14   action, "punitive damages are allowed only upon a showing of "oppression, fraud, or

15   malice." Civ. Code, § 3294.  Negligence, even if gross or reckless, cannot justify punitive

16   damages. *Krusi v. Bear, Stearns & Co.,*144 Cal.App.3d 664, 679 (1983); *Lee v. Bank of*

17   *Am.*, 218 Cal. App. 3d 914, 920 (1990).

## CONCLUSION

19   For the foregoing reasons, Defendant requests that this Court grant its Motion to

20   Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) with prejudice and

21   without leave to amend.

Respectfully Submitted,

STILLMAN & ASSOCIATES

Dated: May 14, 2019          By:_____
                              Philip H. Stillman, Esq.
                             Attorneys for defendant

**PROOF OF SERVICE**

I, the undersigned, certify under penalty of perjury that on May 15, 2019 or as soon as possible thereafter, copies of the foregoing Motion to Dismiss and Memorandum of Points and Authorities was served electronically by the Court's ECF notice to all persons/entities requesting special notice or otherwise entitled to the same.


By: */s/ Philip H. Stillman*
Attorneys for FOUR SISTERS INN, INC.