

Peter Strojnik,
2375 East Camelback Road Suite 600
Phoenix, Arizona 85016
Telephone: (602) 524-6602
ps@strojnik.com
*pro se*

*Filed 9-13-19*
*sc*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PETER STROJNIK, | Case No: 2:19-cv-02991-ODW-JEM |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO OSC [DOC 12]** |
| vs. | **AND DECLARATION** |
| FOUR SISTERS INNS, INC dba CHANNEL ROAD INN | |
| Defendant. | |

## INTRODUCTION

This Response addresses Court's Order to Show Cause [Doc. 20], stating and ordering as follows:

**Proceedings (In Chambers):**

The Complaint filed in this action asserts a claim for injunctive relief arising out of an alleged violation of the Americans with Disabilities Act ("ADA") and a claim for damages pursuant to California's Unruh Act and other state laws. The Court **ORDERS** Plaintiff to **SHOW CAUSE** in writing why the Court should exercise supplemental jurisdiction over the state law claims asserted in the Complaint. *See* 28 U.S.C. §§ 1367(c)(2) & (c)(4).

In responding to this Order to Show Cause, Plaintiff shall identify the amount of statutory damages Plaintiff seeks to recover. Plaintiff and Plaintiff's counsel shall also support their responses to the Order to Show Cause with declarations, signed under penalty of perjury, providing all facts necessary for the Court to determine if they satisfy the definition of a "high frequency litigant" as provided by California Civil Procedure Code sections 425.55(b)(1) & (2).

Plaintiff shall file a Response to this Order to Show Cause by no later than
**September 13, 2019**. Failure to timely or adequately respond to this Order
to Show Cause may, without further warning, result in the dismissal of the
entire action without prejudice or the Court declining to exercise
supplemental jurisdiction over the state law claims and the dismissal of those
claims pursuant to 28 U.S.C. § 1367(c).

For reference, 28 U.S.C. § 1367(c) is reproduced here:

(c) The district courts may decline to exercise supplemental jurisdiction over
    a claim under subsection (a) if—
    (1) the claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or claims over
        which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it has original
        jurisdiction, or
    (4) in exceptional circumstances, there are other compelling reasons for
        declining jurisdiction.

The question of supplemental jurisdiction in ADA / Unruh cases has been recently
analyzed and decided on June 28, 2019 by the Honorable Joseph C. Spero in *Castillo-
Antonio v. Hernandez*, 19-cv-00672-JCS (ND Cal. 2019) at Doc. 20, Exhibit 1. There, the
Court found that the exercise of supplemental jurisdiction over Unruh and DPA claims in
a federal ADA case is particularly warranted. *Castillo-Antonio* is incorporated in its
entirety.

This Response is supported by Plaintiff's Declaration appended hereto.

### SUMMARY

With respect, Plaintiff notes that similar OSCs have become the flavor of the day
in the Central District. At the risk of being presumptuous but based on experience, Plaintiff
fully expects the Court to deny supplemental jurisdiction irrespective of the reasons stated
in the *Castillo-Antonio* decision, Exhibit 1 hereto.

Nonetheless, it is important to note the incredible inefficiency of dismissals of
supplemental state law claims and the unnecessary litigation expenses, delays, and costs
to both the US District Court, the California Superior Court and the parties. By dismissing
supplemental claims, the District Court forces Plaintiff to litigate Federal Claims to
judgment in order to achieve the *res judicata* effect in the subsequently filed State Court

action. This is an extraordinary wasteful use of both Federal and State judicial economy not to mention the additional and completely unnecessary costs to the litigants.

The following memorandum addresses the precise issues raised by the Court.

## MEMORANDUM

Statement of fact disclosed in Plaintiff's separately filed Declaration are by this reference incorporated herein.  Plaintiff additionally offers the proposition that FRCP "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding". FRCP 1. As relevant to the question of a potential dismissal pursuant to 12(b)(1), Plaintiff emphasizes the requirements of (1) "just" (2) "speedy" and (3) "inexpensive"[1].

The factual issues here are legally indistinguishable from those narrated in the *Castillo-Antonio* Decision, Exhibit 1. Plaintiff admits that his writing skills fail to match those of the author of that decision, the Honorable Joseph C. Spero, Northern District's Chief Magistrate Judge, who stated in relevant part, pp 8-14 (footnotes omitted):

**2. Supplemental Jurisdiction Under 28 U.S.C. § 1367**

"When a federal court has original jurisdiction over a claim, then the court 'shall have supplemental jurisdiction supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy . . . .' " *Johnson v. United Rentals Nw., Inc.*, No. 2:11-cv-00204-JAM, 2011 WL 2746110, at *1 (E.D. Cal. July 13, 2011) (quoting 28 U.S.C. § 1367(a)). State claims are part of the same case or controversy as federal claims " 'when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.' " *Kuba v. 1-A Agricultural Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.2d 923, 925 (9th Cir. 2003)).

Supplemental jurisdiction is mandatory unless prohibited by § 1367(b), or unless one of the exceptions in § 1367(c) applies. [*Schutza v.*] *Cuddeback*,

---

[1] Federal courts have applied the Federal Rules of Civil Procedure instead of the pleading requirements outlined in California Code of Civil Procedure section 425.50. *Johnson v. Morning Star Merced, LLC*, No. 1:18-CV-0558 AWI EPG, 2018 WL 4444961, at *5 (E.D. Cal. Sept. 14, 2018). (citing, *e.g.*, *Saavedra v. Chu*, 2017 WL 2468779, *1 (C.D. Cal. June 7, 2017); *Anglin v. Bakersfield Prosthetic & Orthotics Ctr.*, 2013 WL 6858444, *4-5 (E.D. Cal. Dec. 30, 2013); *Oliver v. In-N-Out Burgers*, 286 F.R.D. 475, 477 (S.D. Cal. 2012)).

262 F. Supp. 3d [1025] at 1028 [(S.D. Cal. 2017)] Under § 1367(c), a district court may "decline supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

A district court's discretion to decline to exercise supplemental jurisdiction over state law "is informed by the *Gibbs* values 'of economy, convenience, fairness, and comity.' " *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, (1966)). A court may decline to exercise supplemental jurisdiction under § 1367(c) "under any one of [the statute's] four provisions." *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478-79 (9th Cir. 1998). When dismissing a state-law claim pursuant to § 1367(c)(1)-(3), a district court need not state its reason for dismissal. *Id.* If a district court declines to exercise supplemental jurisdiction under § 1367(c)(4), however, the court must "articulate why the circumstances of the case are exceptional." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994). The Ninth Circuit has cautioned that declining supplemental jurisdiction based on § 1367(c)(4) should be the exception, not the rule. *Id.* at 1558.

**B. Supplemental Jurisdiction over Plaintiff's Claims Is Appropriate**

Defendants do not contest that Plaintiff's ADA claim is properly before the court as a federal question, nor do they dispute that Plaintiff's state-law claims share a common nucleus of operative fact and are "part of the same case or controversy" as the ADA claim. … The court therefore has mandatory supplemental jurisdiction over Plaintiff's state law claims pursuant to § 1367(a) unless one of the exceptions of § 1367(c) applies. Defendants' arguments implicate § 1367(c)(1), § 1367(c)(2), and § 1367(c)(4).

### 1. 28 U.S.C. § 1367(c)(1)

Defendants identify only one potential complex or novel issue of state law implicated by the instant case. They cite a Southern District of California case for the proposition that Plaintiff's state-law claims present a complex

issue of state law because "the Unruh Act requires proof of intentional discrimination while the ADA does not, " even though a violation of the ADA constitutes a per se violation of the Unruh Act. *Schutza v. Lamden*, No. 3:17-CV-2562-L-JLB, 2018 WL 4385377, at *4 (S.D. Cal. Sept. 14, 2018) (describing the tension between the two standards as "an irreconcilably complex issue of state law"). This Court respectfully disagrees with the Southern District's decision. The *Lamden* court relied on a prior Southern District decision reached in 2007. *See Lamden*, 2018 WL 4385377, at *4 (citing *Cross v. Pac. Coast Plaza Invs., L.P.*, No. 06 CV 2543 JM RBB, 2007 WL 951772, at *5 (S.D. Cal. Mar 6, 2007)). However, the California Supreme Court resolved this issue in 2009. *See Munson*, 46 Cal.4th at 664-66 (holding that a plaintiff seeking damages for ADA violations under the Unruh Act is not required to prove intentional discrimination). Accordingly, the Court finds that this does not constitute a complex or novel issue of state law within the meaning of § 1367(c)(1).

Defendants further contend that because the pleading requirements for California state disability discrimination claims were amended by the California legislature as recently as 2016, there might be new complex or novel issues of state law which California state courts should have an opportunity to resolve. The Court finds this argument unpersuasive. As district courts within the Ninth Circuit have repeatedly held, state pleading requirements for disability discrimination claims do not apply in federal court because such requirements are procedural in nature and federal courts use federal procedural rules. *See, e.g., Johnson v. Mariani*, No. 17-CV-01628-BLF, 2017 WL 2929453, at *3 (N.D. Cal. July 10, 2017); *see generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Accordingly, the meaning of California's heightened disability discrimination pleading requirements is not at issue in this case.[4]

The Court finds no novel or complex issues of state law at issue in Plaintiff's state-law claims.

### 2. 28 U.S.C. § 1367(c)(2)

Defendants argue that Plaintiff's state-law claims substantially predominate over Plaintiff's ADA claim because (1) the remedies available to Plaintiff under the state-law claims are more expansive than those available under the ADA and (2) the ADA claim adds nothing to the lawsuit that could not be obtained in state court. Mot. at 7, 8.

The Supreme Court has held that state-law claims can "substantially predominate . . . in terms of proof, of scope of issues raised, or of

comprehensiveness of remedy sought." *United Mine Workers of Am.*, 383 U.S. at 726. Defendants cite several district court decisions which have held that the more expansive remedies available to plaintiffs under the Unruh Act and CDPA mean that such claims necessarily substantially predominate over ADA claims. *See, e.g., Cuddeback*, 262 F.Supp.3d at 1030 (holding that monetary damages of $36, 000 sought by a plaintiff under the Unruh Act substantially predominated over federal injunctive relief sought under the ADA). But district courts within the Ninth Circuit are split on this issue. *Compare, e.g., Vogel v. Winchell's Donut*, 252 F.Supp.3d 977, 986 (C.D. Cal. 2017) (holding that a plaintiff's state-law claims substantially predominated over an ADA claim because the remedies available under state law were more expansive and the ADA claim added no unique remedy to the suit), *with, e.g., Schoors v. Seaport Vill. Operating Co., LLC*, No. 16CV3089 (AJB), 2017 WL 1807954 (S.D. Cal. May 5, 2017) (holding that although a plaintiff's Unruh Act claim offered more comprehensive remedies than their ADA claim, the Unruh Act claim did not substantially predominate over the ADA claim because it involved identical facts, witnesses, and evidence).

In resolving this issue, this Court follows the approach taken in *Schoors* and accordingly finds that Plaintiff's state-law claims do not substantially predominate over Plaintiff's ADA claim. Though the remedies Plaintiff seeks pursuant to his state-law claims exceed those available under the ADA, the federal and state claims involve nearly identical facts, witnesses, and evidence because Plaintiff's Unruh Act and CDPA claims are premised on proving a violation of the ADA. ... To prove his Unruh Act and CDPA claims, Plaintiff need only make an additional showing of the particular occasions on which he encountered the barrier or was deterred from visiting the market to establish statutory damages. *See Kohler v. Rednap, Inc.*, 794 F.Supp.2d 1091, 1096 (C.D. Cal. 2011). Thus, even though the state-law claims provide for more comprehensive remedies, they do not substantially predominate over the ADA claim because the proof required for both the state and federal claims is nearly identical.

Applying the *Gibbs* factors-economy, convenience, fairness, and comity-to the § 1367(c)(2) analysis supports this conclusion. As the *Kohler* court noted:

> It is clearly more convenient and economical for the ADA claim and state-law claims based on those same ADA violations to be litigated in one suit. Moreover, comity does not counsel in favor of declining jurisdiction here, where

state law incorporates the federal substantive standard and simply provides additional remedies. Finally, the Court does not find it unfair to have the state-law claims litigated in this forum, rather than in a separate, and largely redundant, state-court suit.

*Id.* The *Gibbs* factors thus weigh in favor of finding that Plaintiff's state-law claims do not substantially predominate over his ADA claim.[6]

### 3. 28 U.S.C. § 1367(c)(4)

Defendants argue that Plaintiff is using his ADA claim as a "jurisdictional hook" to have his state-law claims heard in federal court to bypass the heightened pleading requirements for disability discrimination claims used in California state courts. ... Plaintiff asserts construction-related accessibility claims and he is a high-frequency litigant as defined by California Code of Civil Procedure section 425.55(b). ... Accordingly, Plaintiff would be subjected to each of the heightened pleading requirements in California Code of Civil Procedure section 425.50 if he filed in California state court. The court in *Johnson v. Morning Star Merced, LLC* succinctly defined those heightened pleading requirements:

> "Section 425.50 imposes the following pleading requirements: (1) complaint must allege whether it is filed by or on behalf of a high-frequency litigator; (2) the number of complaints alleging a construction related accessibility claim that were filed by the high frequency litigator in the past twelve months; (3) the reason the high frequency litigator was in the region of the defendant's business; and (4) the specific reason that the high frequency litigator desired access to the defendant's business. Cal. Code Civ. P. § 425.50(a)(4). Additionally, a high frequency litigator must verify his complaint and pay an additional filing fee. See Cal. Code Civ. P. § 425.50(b); Cal. Gov. Code § 70616.5.

*Johnson v. Morning Star Merced, LLC,* No. 1:18-CV-0558 AWI EPG, 2018 WL 4444961, at *5 (E.D. Cal. Sept. 14, 2018). Federal courts have applied the Federal Rules of Civil Procedure instead of the pleading requirements outlined in California Code of Civil Procedure section 425.50. *Id.* (citing, *e.g.*, *Saavedra v. Chu,* 2017 WL 2468779, *1 (C.D. Cal. June 7, 2017); *Anglin v. Bakersfield Prosthetic & Orthotics Ctr.*, 2013 WL 6858444, *4-5 (E.D. Cal. Dec. 30, 2013); *Oliver v. In-N-Out Burgers,* 286 F.R.D. 475, 477 (S.D. Cal. 2012)).

Defendants note several district court decisions that have accepted their argument. *See, e.g., Velez v. Il Fornanio (Am.) Corp.*, No. 3:18-cv-1840-CAB, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018) (declining to exercise supplemental jurisdiction over a plaintiff's Unruh Act claim in part because doing so would frustrate the California legislature's attempt to discourage vexatious disability discrimination by adopting heightened pleading requirements for the Unruh Act); *Cuddeback*, 262 F.Supp.3d at 1025; *Brick Oven Rest.*, 406 F.Supp.2d at 1120. These cases "emphasize that the plaintiffs are high frequency litigants, that there is nothing to be gained by litigating in federal court other than to avoid state pleading requirements, the plaintiffs are engaged in forum shopping, and that considerations of comity and discouraging forum shopping constitute 'exceptional circumstances' under § 1367(c)(4)." *Morning Star Merced, LLC*, 2018 WL 4444961, at *5.

Other district court decisions have, however, rejected this argument. *See, e.g., Morning Star Merced, LLC*, 2018 WL 444496; *Mariani*, 2017 WL 2929453 at *11; *Schoors*, 2017 WL 1807954. "These cases emphasize that considerations of fairness and efficiency outweigh any concerns over comity, and that there is nothing improper about a litigant choosing to litigate in federal court." *Morning Star Merced, LLC*, 2018 WL 4444961, at *6 (internal citations omitted).

Applying the *Gibbs* factors, this Court finds the reasoning *of the Morning Star Merced* court persuasive and accordingly finds no compelling reason to decline to exercise supplemental jurisdiction over Plaintiffs state-law claims. Comity concerns weigh in favor of Defendants' argument, given that the California legislature has enacted heightened pleading requirements for suits like this one. However, "***it is not efficient, convenient, or fair to require [Plaintiff] to file two nearly identical cases involve [sic] materially identical proof and issues.***" *Id.* It is more economical to have all of Plaintiff s claims heard in one court "instead of requiring duplicative efforts in multiple courts, possibly involving multiple juries, and possibly leading to inconsistent results." *Id.* Nor should a plaintiff be forced to choose between either proceeding in two separate forums or forsaking the plaintiff's entitlement to bring an ADA claim in federal court and instead litigating it in state court. Accordingly, the Court finds no compelling reason to decline to exercise supplemental jurisdiction over Plaintiff s state-law claims. (Emphasis supplied)

On the question whether state claims "substantially predominate" over state claims, Plaintiff's Declaration explains further:

13. If *and only if* Declarant can prove any of the allegations in Count 1, do Counts 2 and 3 come into play. In such case, the resolution of Counts 2 and 3 is based purely on statutory damages.  Statutory damages require an algebraic computation multiplying the number of ADA violations by the minimum statutory damage of $4,000.00. The resolution of DPA damages likewise requires a simple algebraic computation, except multiplying the number of violations by $1,000.00.

14. Total amount of Unruh and DPA damages is a minor legal issue, requiring a simple mathematical computation.  While the trial is estimated to last 2-3 days, *see* Doc 19, Joint Rule 26(f) Report at ¶ 7, it is reasonably anticipated that the resolution of ADA violations will dominate 98% of that trial time while the algebraic computations of Unruh and DPA damages will absorb the remaining 2% of the time.

15. Therefore, the federal ADA issues will substantially predominate over the state law issues to the extent of 50-1.Since Defendant denied that it violated *any* of the alleged ADA and Unruh provisions and since  Declarant seeks statutory damages *only* as to those violations of Unruh and DPA that the Jury will find are true and correct, it would be highly presumptuous for Declarant to "identify the amount of statutory damages plaintiff seeks to recover".

16. Therefore, any declaration under oath that Declarant seeks a specified, quantified amount of statutory damages would be presumptuous and inappropriate; therefore, Declarant cannot at this time "identify the amount of statutory damages plaintiff seeks to recover".

The consideration of supplemental jurisdiction is not yet ripe for consideration. The quantification of damages is impossible until the Jury decided what alleged violations, if any, occurred, because only then can the amount of damages be ascertained. Additionally, irrespective of the number of violations proven, the algebraic computation of damages consists of approximately 2% of the trial time, all of that time just to mathematically figure the minimum statutory amounts. The rest of the time, 98%, will be spent litigating violations which form the premise for minimum statutory damages.

It would be unreasonable to argue that 2% of the issues "substantially predominate" over 98% of the issues.

### CONCLUSION AND PRAYER FOR RELIEF

Plaintiff urges the Court to consider economic efficiencies of resolving both Federal ADA issues and State Unruh and DPA issues simultaneously as suggested in the Summary. The *Castillo-Antonio* is most recent and therefore most persuasive. It reviews and analyzes the current state of the supplemental jurisdiction law in the 9th Circuit Districts and, on the basis of legally indistinguishable facts, finds that the exercise of supplemental jurisdiction is mandatory since no 28 U.S.C. § 1367(c) exceptions apply.

Plaintiff therefore respectfully requests that the Court retain supplemental jurisdiction.

DATED this 3RD day of September 2019.

PETER STROJNIK

Plaintiff

Mailed to the District Court and e-mailed to counsel for defendant this 3rd day of September, 2019.

Philip H. Stillman, Esq. SBN# 152861
STILLMAN & ASSOCIATES
3015 North Bay Road, Suite B
Miami Beach, Florida 33140
Tel. and Fax: (888) 235-4279
pstillman@stillmanassociates.com

# DECLARATION OF PETER STROJNIK

This Declaration is made in response to Order to Show Cause [Doc. 12], stating and ordering as follows:

## Proceedings (In Chambers):

The Complaint filed in this action asserts a claim for injunctive relief arising out of an alleged violation of the Americans with Disabilities Act ("ADA") and a claim for damages pursuant to California's Unruh Act and other state laws. The Court **ORDERS** Plaintiff to **SHOW CAUSE** in writing why the Court should exercise supplemental jurisdiction over the state law claims asserted in the Complaint. *See* 28 U.S.C. §§ 1367(c)(2) & (c)(4).

In responding to this Order to Show Cause, Plaintiff shall identify the amount of statutory damages Plaintiff seeks to recover. Plaintiff and Plaintiff's counsel shall also support their responses to the Order to Show Cause with declarations, signed under penalty of perjury, providing all facts necessary for the Court to determine if they satisfy the definition of a "high frequency litigant" as provided by California Civil Procedure Code sections 425.55(b)(1) & (2). Plaintiff shall file a Response to this Order to Show Cause by no later than **September 13, 2019**. Failure to timely or adequately respond to this Order to Show Cause may, without further warning, result in the dismissal of the entire action without prejudice or the Court declining to exercise supplemental jurisdiction over the state law claims and the dismissal of those claims pursuant to 28 U.S.C. § 1367(c).

For reference, Declarant reproduces 28 U.S.C. § 1367(c):

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
   (1) the claim raises a novel or complex issue of State law,
   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
   (3) the district court has dismissed all claims over which it has original jurisdiction, or
   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Declarant's statements below relate primarily to 28 U.S.C. § 1367(c)(2) as items 1 and 3 are eminently inapplicable and item 4 does not appear to be the focus of the Order to Show Cause.

Declarant further notes that the question of supplemental jurisdiction in ADA / Unruh cases has been recently analyzed and decided on June 28, 2019 by the Honorable Joseph C. Spero in *Castillo-Antonio v. Hernandez*, 19-cv-00672-JCS (ND Cal. 2019) at Doc. 20, Exhibit 1 to Declarant's Response to OSC. There, the Court found that the exercise of supplemental jurisdiction over Unruh and DPA claims in an ADA case is clearly warranted. *Castillo-Antonio* is incorporated in its entirety.

**WHEREFORE**, the following Declaration is offered:

1. Declarant is the Plaintiff in the above cause acting pro se.

2. Declarant makes this Declaration from his own personal knowledge to the best of his memory and ability.

### A.    Declarant's General ADA Procedure

3. Declarant is a retired 67 year old disabled veteran, an immigrant and a former lawyer. He spends his retirement years travelling across America. While traveling he tests places of lodging for ADA compliance. If a particular place of lodging is not ADA, Unruh or DPA[2] compliant, he documents the violations, prepares a Due Diligence Report, incorporates the Due Diligence Report into a draft Complaint as Addendum A, and issues it to the offending place of lodging along with a courtesy notice of potential litigation. Declarant is an ADA "tester" as this term is defined in Civil Rights Education and Enforcement Center v. Hospitality Properties Trust, 867 F.3d 1093, 1099 (9th Cir. 2017) ("CREEC")

4. Declarant followed this practice in the current case, and, on January 6, 2019, issued to Defendant a *Courtesy Notice of Potential Litigation*, Exhibit 1.

5. In ¶ 2 of the Notice, Declarant requested that Defendant review the allegations in Addendum A to the Complaint, stating:

> In the preparation of the attached draft Complaint, I gathered information from third party booking agent's website (hotels.com) and the hotel's 1st party booking website and other sources. Some of the information may be

---

[2] A violation of the ADA ipso facto represent a violation of the ADA, *see* Unruh at §51(f)[2] ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section.")

old or otherwise unreliable; therefore, let me know any corrections that should be incorporated into the draft complaint. Further, please review the attached 2010 Standards of Accessibility Design and, pursuant to 28 CFR §36.302(e), disclose which of the mobility requirements have not been met.

6. Defendant declined to let Declarant know "any corrections that should be incorporated into the draft complaint" which necessitated the current lawsuit.

**B. Declarant's Prayer for Relief**

7. Plaintiff's Complaint is based on (1) violation of 28 CFR 36.302(e) and (2) on deterrence based on Declarant's knowledge of accessibility barriers disclosed in Defendant's first and third party booking sites and disclosed in Addendum to the Complaint [Doc. 1 at pp 11-31]

8. **Count 1** (Violation of Plaintiff's Civil Rights under the ADA) seeks relief under the ADA. This count substantially predominates over all state law issues. It the prayer for relief, Doc 1 at ¶ 25, Declarant requests:

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A. Relief described in 42 U.S.C. §2000a – 3; and
    B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -
    C. Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and
    D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and
    E. Equitable nominal damages; and
    F. For costs, expenses and attorney's fees; and
    G. All remedies provided for in 28 C.F.R. 36.501(a) and (b).

9. Declarant is aware that in order to prove a violation of the ADA, he must show (1) that he is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the plaintiff faced discrimination on the basis of disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

10. **Count 2** (California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52) and **Count 3** (California Disabled Persons Act, Cal. Civ. Code §§54-54.3) request relief as follows: As to Cunt 2:

37. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00 per encounter with each barrier to accessibility.

As to Count 3:

43. Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3

11. Declarant is aware that Unruh Act expressly incorporates ADA standards and any violation of the ADA is simultaneously a violation of Unruh. Act. Cal. Civ. Code § 51(f).

12. If *and only if* Declarant can prove any of the allegations in Count 1, do Counts 2 and 3 come into play. In such case, the resolution of Counts 2 and 3 is based purely on statutory damages. Statutory damages require an algebraic computation multiplying the number of ADA violations by the minimum statutory damage of $4,000.00. The resolution of DPA damages likewise requires a simple algebraic computation, except multiplying the number of violations by $1,000.00.

13. Total amount of Unruh and DPA damages is a minor legal issue, requiring a simple mathematical computation. It is reasonably anticipated that the resolution of ADA violations will dominate 98% of that trial time while the algebraic computations of Unruh and DPA damages will absorb the remaining 2% of the time.

14. Therefore, the federal ADA issues will substantially predominate over the state law issues to the extent of 50-1.

15. declaration under oath that Declarant seeks a specified, quantified amount of statutory damages would be presumptuous and inappropriate; therefore, Declarant cannot at this time "identify the amount of statutory damages plaintiff seeks to recover".

## C. The Question of High Frequency Litigant Under State Law

16. California Civil Procedure Code sections 425.55(b)(1) & (2) provide:

(b) For the purposes of this article, "high-frequency litigant" means a person, except as specified in paragraph (3), who utilizes court resources in actions arising from alleged construction-related access violations at such a high level that it is appropriate that additional safeguards apply so as to ensure that the claims are warranted. A "high-frequency litigant" means one or more of the following:

(1) A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

(2) An attorney who has represented as attorney of record 10 or more high-frequency litigant plaintiffs in actions that were resolved within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation, excluding all of the following actions:

(A) An action in which an early evaluation conference was held pursuant to Section 55.54 of the Civil Code.

(B) An action in which judgment was entered in favor of the plaintiff.

(C) An action in which the construction-related accessibility violations alleged in the complaint were remedied in whole or in part, or a favorable result was achieved, after the plaintiff filed a complaint or provided a demand letter, as defined in Section 55.3 of the Civil Code.

17. Plaintiff is aware, however, that Federal, not State law governs the applicability of federal statute 28 U.S.C. § 1367(c).

18. Here, Declarant's Complaint is not based on "actions arising from alleged construction-related access violations" but on the disclosures pursuant to 28 CFR36.302(e). Therefore, he is not a high frequency litigant under California law.

19. California Civil Procedure §307 provides that "There is in this State but one form of civil actions for the enforcement or protection of private rights and the redress or prevention of private wrongs."

20. Because Declarant filed this action in federal court and the current action is not a State action but a federal Action, Declarant is not a High Frequency Litigant.

21. To the extent that this Court decided supplemental jurisdiction issue on the basis of (exceptional circumstances" referenced in 28 U.S.C. § 1367(c)(4), Declarant seeks leave to supplement this Declaration.

DATED this 3RD day of September 2019.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PETER STROJNIK**

_____

Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**



**PETER STROJNIK**

2375 EAST CAMELBACK ROAD
SUITE 600
PHOENIX, ARIZONA 85016
TELEPHONE: 602-524-6602
E-MAIL PS@STROJNIK.COM

December 14, 2018

Heather Channelmanager@foursisters.com
Four Sisters Inns, Inc dba Channel Road Inn
219 W Channel Rd, Santa Monica, CA 90402

Re: *Courtesy Notice of Potential Litigation*

Dear General Manager Heather:

I am a disabled veteran and an ADA tester. I intended to visit your Hotel on December 10, 2018. During my booking procedure I noted that the Hotel does not provide equal access as required by 28 CFR §36.302(e), and during my stay there I noted that it does not comply with the 2010 Standards of Accessibility Design or California's Unruh and DPA.

In the preparation of the attached draft Complaint, I gathered information from third party booking agent's website and the hotel's 1st party booking website. This information may be old and not reliable; therefore, let me know any corrections that should be incorporated into the draft Complaint. Further, please review the attached 2010 Standards for Accessibility Design and, pursuant to 28 CFR §36.302(e), disclose which of the mobility requirements have not been met.

I strongly suggest you consult with an attorney learned in ADA issues. This is a complex matter involving significant potential damages, attorney's fees, costs and expenses to you.

I request that you respond to this communication no later than Friday, January 10, 2019. If this time is insufficient to review the matter thoroughly, please let me know. In the meantime, I am able to discuss this matter with you or your counsel by phone and e-mail.

Sincerely,

Peter Strojnik

Encls. as indicated

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DANIEL CASTILLO-ANTONIO, | Case No. 19-cv-00672-JCS |
| Plaintiff, | |
| v. | **ORDER REGARDING MOTION TO DISMISS** |
| RAFAEL HERNANDEZ, et al., | Re: Dkt. No. 10 |
| Defendants. | |

## I.     INTRODUCTION

Plaintiff Jose Daniel Castillo-Antonio brings this action against Defendants Rafael Hernandez, Carmen Hernandez, and several Doe defendants not yet identified. Plaintiff alleges that Defendants failed to provide barrier-free access for disabled persons to their business in violation of federal and California law. Defendants Rafael and Carmen Hernandez move to dismiss Castillo-Antonio's state-law claims for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for July 12, 2019. For the reasons discussed below, Defendants' motion is DENIED.[1]

A case management conference will occur on July 12, 2019 at 2:00 PM, for which the parties may request to appear telephonically if they so choose. The parties shall file a joint case management statement no later than July 10, 2019.

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Factual Allegations

Castillo-Antonio is severely limited in the use of his legs and qualifies as a "physically handicapped person," a "physically disabled person," and a "person with a disability" as those terms are used under applicable California and federal law, including the Unruh Civil Rights Act ("Unruh Act"), the California Disabled Persons Act ("CDPA"), and Title III of the Americans with Disabilities Act of 1990 ("ADA"). Compl. (dkt. 1) ¶ 6. Defendants own and operate the Hernandez Meat Market in Oakland, California. *Id.* ¶ 3.

On or about June 30, 2018, September 28, 2018, and December 29, 2018, Plaintiff visited Hernandez Meat Market to buy food and beverages. *Id.* ¶ 12. Plaintiff alleges that he encountered several architectural barriers that interfered with his access to Hernandez Meat Market in violation of both California and federal law. *Id.* ¶¶ 3, 4. First, the primary entrance door allegedly lacked the proper posted International Symbol of Accessibility in violation of California Code of Regulations Title 24 (the California Building Code, or "CBC") section 11B-216.6 and the Americans with Disabilities Act Accessibilities Guidelines of the United States Access Board ("ADAAG") section 4.30.7. *Id.* ¶ 3. Second, the aisles inside the business were purportedly too narrow in violation of CBC section 11B-904.4. and ADAAG section 7.2. *Id.* ¶¶ 3, 4. Third, Plaintiff asserts that the service countertop for sales was not accessible for wheelchair occupants in violation of CBC section 11-904.4.1 and ADAAG section 7.2 ¶ 4. Finally, Plaintiff alleges the designated parking spot was not properly laid out in violation of CBC sections 11B-247.1.2.5, 11B-705.1.2.5, 11B-502.2, 11B-502.3, and 11B-502.4 as well as ADAAG sections 4.6.3, 4.6.6, 4.1.2(1), 4.3.2(1), and 4.14.1. *Id.*

During each visit, Plaintiff alleges that he informed Defendants of the architectural barriers. Compl. ¶ 12. Plaintiff asserts that by the third visit, Defendants had not removed the alleged barriers. *Id.* As a result, Plaintiff alleges to have been deterred from making a fourth visit on or about February 4, 2019. *Id.* Plaintiff maintains that he plans to visit the business in the future if the alleged violations are remedied. *Id.* ¶ 14. As a result of encountering these alleged violations, Plaintiff alleges that he suffered and continues to suffer emotional distress and

violations of his civil rights to full and equal enjoyment of goods, services, facilities, and privileges. *Id.* ¶ 17.

Plaintiff asserts four causes of action against Defendants: (1) violation of the ADA (42 U.S.C. § 12101 et seq.); (2) breach of statutory protections for persons with physical disabilities (California Health and Safety Code § 19955); (3) violation of the CDPA (Cal. Civ. Code §§ 54, 54.1, and 54.3); and, (4) violation of the Unruh Act (Cal. Civ. Code §§ 51 and 51.5). Compl. ¶¶ 34, 35, 45, 56, 67. In connection with these claims, Plaintiff seeks injunctive relief, attorney's fees, declaratory relief, compensatory damages, and statutory damages under the Unruh Act, or, in the alternative, under the CDPA. Compl. at 21–23 (prayer for relief).

## B. Relevant Statutes

### 1. The Americans with Disabilities Act

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A grocery store like the one operated by Defendants is a "public accommodation" within the meaning of the ADA. 42 U.S.C. § 12181(7)(E).

To prevail on an ADA claim, a plaintiff must show that: (1) they are disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied access to public accommodations by the defendant because of the plaintiff's disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). A plaintiff may seek injunctive relief and attorney's fees under the ADA. 42 U.S.C. §§ 12188(a)(2), 12205. Damages are not available in private suits under the ADA. *M.J. Cable, Inc.*, 481 F.3d at 730 (citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002)).

### 2. The Unruh Civil Rights Act

The Unruh Act states that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of

every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA is a per se violation of the Unruh Act. Cal. Civ. Code § 51(f). Claims can also be brought under the Unruh Act without relying on the ADA if the plaintiff demonstrates an intentional discriminatory act or omission by the defendant. *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1029 (S.D. Cal. 2017) (citing *Org. for the Advancement of Minorities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1129 (S.D. Cal. 2005)). An Unruh Act claim premised on a violation of the ADA does not require a showing of intentional discrimination. *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664–66 (2009).

Like the ADA, the Unruh Act allows plaintiffs to seek injunctive relief and attorney's fees. Cal. Civ. Code § 52(c)(3). The Unruh Act also allows plaintiffs to recover "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." Cal. Civ. Code § 52(a). A plaintiff "need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski*, 481 F.3d at 731 (citing *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000)).

### 3. The California Disabled Persons Act

The CDPA establishes that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations . . . and other places to which the general public is invited." Cal. Civ. Code § 54.1(a)(1). A violation of the ADA is a per se violation of the CDPA. Cal Civ. Code § 54.1(e). Under the CDPA, a plaintiff is entitled to actual damages "up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars" and "attorney's fees as may be determined by the court in addition thereto." Cal. Civ. Code § 54.3(a).

### 4. The California Health and Safety Code

The California Health and Safety Code ("CHSC") requires all public accommodations constructed in California to conform with the provisions of Chapter 7 (commencing with section 4450) of Division 5 of Title 1 of the Government Code. Cal. Health & Safety Code § 19956. Section 4450 of the Government Code directs the State Architect "to submit proposed building standards to the California Building Standards Commission for approval" and "develop other regulations for making buildings, structures, sidewalks, curbs, and related facilities accessible to

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    and usable by persons with disabilities." Cal. Gov't Code § 4450. The State Architect

2    promulgated such regulations, which are codified in Title 24 of the California Code of

3    Regulations. A plaintiff suing under CHCS section 19955 may seek both injunctive relief and

4    attorney's fees. Cal. Health & Safety Code § 19953.

5    **C.    Parties' Arguments**

6         Defendants move to dismiss Plaintiff's state-law claims under Rule 12(b)(1) of the Federal

7    Rules of Civil Procedure for lack of subject matter jurisdiction. Mot. (dkt. 10) at 3. The Court

8    may hear the ADA claim pursuant to federal question jurisdiction under 28 U.S.C. § 1331. The

9    other three claims brought by Plaintiff arise under California law, so the Court may only hear them

10   pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367.[2] Defendants argue that the

11   Court should decline to exercise supplemental jurisdiction because: (1) Plaintiff's state-law claims

12   substantially predominate over his ADA claim; (2) allowing Plaintiff's state-law claims into

13   federal court raises comity concerns in relation to the California legislature; and (3) Plaintiff's

14   state-law claims raise novel and complex issues of state law. Defendants present the first two of

15   these arguments in their motion, and raise the third argument for the first time in their reply.

16        In support of their first argument, Defendants maintain that the Unruh Act and CDPA

17   provide more expansive remedies than the ADA, meaning the state-law claims substantially

18   predominate over the federal-law claim such that the Court should decline to exercise

19   supplemental jurisdiction over the state-law claims pursuant to § 1367(c)(2). Mot. at 7. The ADA

20   allows plaintiffs to sue for injunctive relief and attorney's fees, but not for compensatory or

21   statutory damages. 42 U.S.C. § 12188(a). By contrast, when taken together, the Unruh Act and

22   CDPA allow plaintiffs to sue not only for injunctive relief and attorney's fees, but also for

23   compensatory and statutory damages, which may be trebled. Cal. Civ. Code §§ 52, 54.3.

24   Defendants interpret this discrepancy in available remedies to mean that the federal claim adds no

25   value to Plaintiff's suit because the remedies that could be obtained under the ADA in federal

26   court could also be obtained in state court under the Unruh Act. Mot. at 7. Accordingly, they

27

28   [2] There is no indication, and no party has suggested, that this case falls within the Court's diversity
     jurisdiction under 28 U.S.C. § 1332.

                                              5

1    argue that the state-law claims substantially predominate over the federal law claim. *Id.*

2         In support of their second argument, Defendants contend that the Court should decline to

3    exercise supplemental jurisdiction over Plaintiff's state-law claims in the interest of comity with

4    the California legislature. Mot. at 8. In 2012, the California legislature adopted heightened

5    pleading requirements for disability discrimination claims brought under the Unruh Act and

6    CDPA. *See* Cal. Civ. Proc. Code § 425.50. Because state civil procedures do not apply in federal

7    court, Defendants argue that Plaintiff is using the ADA claim as a "jurisdictional hook" to bring

8    his state claims in federal court, thereby sidestepping the heightened pleading requirements under

9    state law. *Id.* at 8, 9. Defendants maintain that this contravenes the intent of the California

10   legislature and that the Court should therefore decline to exercise supplemental jurisdiction over

11   Plaintiff's state-law claims in the interest of comity. *Id.* at 8. Though Defendants do not argue

12   this explicitly, the comity concern would fit within the framework of § 1367(c), if at all, as an

13   "other compelling reason" to decline to exercise supplemental jurisdiction pursuant to §

14   1367(c)(4).

15        In opposition, Plaintiff cites a Ninth Circuit case for the proposition that "dismissal for lack

16   of subject matter jurisdiction in a case premised on federal question jurisdiction is 'exceptional.'"

17   Opp'n (dkt. 12) ¶ 5 (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th

18   Cir. 1983)). Plaintiff contends that "[j]urisdictional dismissal is not warranted when 'the

19   jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is

20   dependent on the resolution of factual issues going to the merits of the action' " and that the

21   substantive and jurisdictional issues of his state-law claims are intertwined in such a way. *Id.*

22   (quoting *Sun Valley Gasoline*, 711 F.2d at 139). Accordingly, Plaintiff maintains that it would be

23   inappropriate to dismiss his state-law claims "at this very early stage of the litigation." *Id.* ¶ 14.

24        Plaintiff further argues that courts must be cautious when construing a plaintiff's past ADA

25   litigation against them because, "as the Ninth Circuit 'has noted more than once, for the

26   Disabilities Act to yield its promise of equal access for the disabled, it may be necessary and

27   desirable for committed individuals to bring serial litigation advancing the time when public

28   accommodations will be compliant with the Disabilities Act.' " Opp'n ¶ 5 (quoting *Antoninetti v.*

United States District Court
Northern District of California

6

*Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) (internal citations and quotation marks omitted)). Defendants respond that the authority Plaintiff relies upon for this claim was issued prior to California's adoption of heightened pleading requirements for disability discrimination claims. Reply (dkt. 13) at 1.

Finally, Plaintiff quotes at length a recent decision from this district. Opp'n ¶ 15 (quoting *Johnson v. Mariani*, No. 17-cv-01628-BLF, 2017 WL 2929453 (N.D. Cal. July 10, 2017)). The *Mariani* court found that the plaintiff's state-disability-discrimination claims did not substantially predominate over the plaintiff's ADA claim because the claims had nearly identical proof and scope, even if the state law remedies were more expansive. *Id.* Defendants criticize this case for relying on authority which predates the heightened pleading requirements adopted by the California legislature since 2012. Reply at 3.

In their reply, Defendants argue for the first time that Plaintiff's state-law claims raise novel and complex issues of state law such that the Court should decline to exercise supplemental jurisdiction over them pursuant to § 1367(c)(1). Reply at 1. They contend that California courts have a substantial interest in interpreting pleading requirements for state disability discrimination claims because the California legislature amended those requirements as recently as 2016. *Id.* at 3. They point to one specific issue of state law. To make a claim under the Unruh Act generally requires a showing of intentional discrimination. *See Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004). However, an ADA violation, which has no intent requirement, is a per se violation of the Unruh Act. *See* 42 U.S.C. § 12182(b)(2)(A)(iv); Cal. Civ. Code § 51(f). Defendants contend that the California Supreme Court, not a federal district court, should resolve this issue. Reply at 3.

## III. ANALYSIS

### A. Legal Standard

#### 1. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, "federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists" over a given claim. *Leeson v.*

*Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (internal quotation marks and citations omitted). Rule 12(b)(1) allows defendants to move to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). If the defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to demonstrate the existence of jurisdiction, the Court's inquiry is much the same as when ruling on a motion to dismiss brought under Rule 12(b)(6). *Brick Oven Rest.*, 406 F. Supp. 2d at 1124 (citing Moore's Federal Practice § 12.30). This means the court accepts the factual allegations in the complaint as true. *Miranda v. Reno*, 238 F.3d 1156, 1157 (9th Cir. 2001).

### 2. Supplemental Jurisdiction Under 28 U.S.C. § 1367

"When a federal court has original jurisdiction over a claim, then the court 'shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy . . . .' " *Johnson v. United Rentals Nw., Inc.*, No. 2:11-cv-00204-JAM, 2011 WL 2746110, at *1 (E.D. Cal. July 13, 2011) (quoting 28 U.S.C. § 1367(a)). State claims are part of the same case or controversy as federal claims " 'when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.' " *Kuba v. 1–A Agricultural Ass'n*, 387 F.3d 850, 855–56 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.2d 923, 925 (9th Cir. 2003)).

Supplemental jurisdiction is mandatory unless prohibited by § 1367(b),[3] or unless one of the exceptions in § 1367(c) applies. *Cuddeback*, 262 F. Supp. 3d at 1028. Under § 1367(c), a

---

[3] 28 U.S.C. § 1367(b) applies to civil actions of which a district court has original jurisdiction founded solely on 28 U.S.C. § 1332 (diversity jurisdiction). Because the Court's jurisdiction over this controversy is founded on 28 U.S.C. § 1331 (federal question jurisdiction), § 1367(b) is inapplicable.

United States District Court
Northern District of California

United States District Court
Northern District of California

district court may "decline supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

A district court's discretion to decline to exercise supplemental jurisdiction over state law "is informed by the *Gibbs* values 'of economy, convenience, fairness, and comity.' " *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, (1966)). A court may decline to exercise supplemental jurisdiction under § 1367(c) "under any one of [the statute's] four provisions." *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478–79 (9th Cir. 1998). When dismissing a state-law claim pursuant to § 1367(c)(1)–(3), a district court need not state its reason for dismissal. *Id.* If a district court declines to exercise supplemental jurisdiction under § 1367(c)(4), however, the court must "articulate why the circumstances of the case are exceptional." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994). The Ninth Circuit has cautioned that declining supplemental jurisdiction based on § 1367(c)(4) should be the exception, not the rule. *Id.* at 1558.

### B.    Supplemental Jurisdiction over Plaintiff's Claims Is Appropriate

Defendants do not contest that Plaintiff's ADA claim is properly before the court as a federal question, nor do they dispute that Plaintiff's state-law claims share a common nucleus of operative fact and are "part of the same case or controversy" as the ADA claim. Mot. at 6. The court therefore has mandatory supplemental jurisdiction over Plaintiff's state law claims pursuant to § 1367(a) unless one of the exceptions of § 1367(c) applies. Defendants' arguments implicate § 1367(c)(1), § 1367(c)(2), and § 1367(c)(4).

#### 1. 28 U.S.C. § 1367(c)(1)

Defendants identify only one potential complex or novel issue of state law implicated by the instant case. They cite a Southern District of California case for the proposition that Plaintiff's

state-law claims present a complex issue of state law because "the Unruh Act requires proof of intentional discrimination while the ADA does not," even though a violation of the ADA constitutes a per se violation of the Unruh Act. *Schutza v. Lamden*, No. 3:17-CV-2562-L-JLB, 2018 WL 4385377, at *4 (S.D. Cal. Sept. 14, 2018) (describing the tension between the two standards as "an irreconcilably complex issue of state law"). This Court respectfully disagrees with the Southern District's decision. The *Lamden* court relied on a prior Southern District decision reached in 2007. *See Lamden*, 2018 WL 4385377, at *4 (citing *Cross v. Pac. Coast Plaza Invs., L.P.*, No. 06 CV 2543 JM RBB, 2007 WL 951772, at *5 (S.D. Cal. Mar 6, 2007)). However, the California Supreme Court resolved this issue in 2009. *See Munson*, 46 Cal. 4th at 664–66 (holding that a plaintiff seeking damages for ADA violations under the Unruh Act is not required to prove intentional discrimination). Accordingly, the Court finds that this does not constitute a complex or novel issue of state law within the meaning of § 1367(c)(1).

Defendants further contend that because the pleading requirements for California state disability discrimination claims were amended by the California legislature as recently as 2016, there might be new complex or novel issues of state law which California state courts should have an opportunity to resolve. The Court finds this argument unpersuasive. As district courts within the Ninth Circuit have repeatedly held, state pleading requirements for disability discrimination claims do not apply in federal court because such requirements are procedural in nature and federal courts use federal procedural rules. *See, e.g.*, *Johnson v. Mariani*, No. 17-CV-01628-BLF, 2017 WL 2929453, at *3 (N.D. Cal. July 10, 2017); *see generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Accordingly, the meaning of California's heightened disability discrimination pleading requirements is not at issue in this case.[4]

---

[4] Defendants' arguments could perhaps be construed as suggesting that by hearing Plaintiff's state-law claims, the Court is denying California state courts an opportunity to interpret the heightened pleading requirements. However, Defendants point to no particular issue regarding these requirements raised by this case. Even assuming there were such an issue, and that ensuring state courts the opportunity to consider such issues is a valid reason to decline jurisdiction under § 1367(c), disability discrimination claims are hardly a rarity, so the California state courts have had and will have other opportunities to interpret disability discrimination pleading requirements. Plaintiff himself has filed such claims in state court as recently as February 2, 2018. Surreply (dkt. 14) at 1.

United States District Court
Northern District of California

The Court finds no novel or complex issues of state law at issue in Plaintiff's state-law claims.

### 2. 28 U.S.C. § 1367(c)(2)

Defendants argue that Plaintiff's state-law claims substantially predominate over Plaintiff's ADA claim because (1) the remedies available to Plaintiff under the state-law claims are more expansive than those available under the ADA and (2) the ADA claim adds nothing to the lawsuit that could not be obtained in state court. Mot. at 7, 8.

The Supreme Court has held that state-law claims can "substantially predominate . . . in terms of proof, of scope of issues raised, or of comprehensiveness of remedy sought." *United Mine Workers of Am.*, 383 U.S. at 726. Defendants cite several district court decisions which have held that the more expansive remedies available to plaintiffs under the Unruh Act and CDPA mean that such claims necessarily substantially predominate over ADA claims.[5] *See, e.g.*, *Cuddeback*, 262 F. Supp. 3d at 1030 (holding that monetary damages of $36,000 sought by a plaintiff under the Unruh Act substantially predominated over federal injunctive relief sought under the ADA). But district courts within the Ninth Circuit are split on this issue. *Compare, e.g.*, *Vogel v. Winchell's Donut*, 252 F. Supp. 3d 977, 986 (C.D. Cal. 2017) (holding that a plaintiff's state-law claims substantially predominated over an ADA claim because the remedies available under state law were more expansive and the ADA claim added no unique remedy to the suit), *with, e.g.*, *Schoors v. Seaport Vill. Operating Co., LLC*, No. 16CV3089 (AJB), 2017 WL 1807954 (S.D. Cal. May 5, 2017) (holding that although a plaintiff's Unruh Act claim offered more comprehensive remedies than their ADA claim, the Unruh Act claim did not substantially predominate over the ADA claim because it involved identical facts, witnesses, and evidence).

In resolving this issue, this Court follows the approach taken in *Schoors* and accordingly finds that Plaintiff's state-law claims do not substantially predominate over Plaintiff's ADA claim.

---

[5] Defendants do not implicate Plaintiff's CHSC claim in arguing that Plaintiff's state-law claims substantially predominate over Plaintiff's federal claim. Because Plaintiff may only recover injunctive relief and attorney's fees under the CHSC, the CHSC does not provide more expansive remedies than the ADA. A violation of the ADA is, however, not a per se violation of the CHSC, so the evidence required to prove Plaintiff's CHSC claim may differ from what is required to prove Plaintiff's other claims.

United States District Court
Northern District of California

Though the remedies Plaintiff seeks pursuant to his state-law claims exceed those available under the ADA, the federal and state claims involve nearly identical facts, witnesses, and evidence because Plaintiff's Unruh Act and CDPA claims are premised on proving a violation of the ADA. *See* Compl. ¶¶ 56, 64, 68; Cal. Civ. Code §§ 51(f), 54(c). To prove his Unruh Act and CDPA claims, Plaintiff need only make an additional showing of the particular occasions on which he encountered the barrier or was deterred from visiting the market to establish statutory damages. *See Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011). Thus, even though the state-law claims provide for more comprehensive remedies, they do not substantially predominate over the ADA claim because the proof required for both the state and federal claims is nearly identical.

Applying the *Gibbs* factors—economy, convenience, fairness, and comity—to the § 1367(c)(2) analysis supports this conclusion. As the *Kohler* court noted:

> It is clearly more convenient and economical for the ADA claim and state-law claims based on those same ADA violations to be litigated in one suit. Moreover, comity does not counsel in favor of declining jurisdiction here, where state law incorporates the federal substantive standard and simply provides additional remedies. Finally, the Court does not find it unfair to have the state-law claims litigated in this forum, rather than in a separate, and largely redundant, state-court suit.

*Id.* The *Gibbs* factors thus weigh in favor of finding that Plaintiff's state-law claims do not substantially predominate over his ADA claim.[6]

### 3. 28 U.S.C. § 1367(c)(4)

Defendants argue that Plaintiff is using his ADA claim as a "jurisdictional hook" to have his state-law claims heard in federal court to bypass the heightened pleading requirements for

---

[6] Plaintiffs also cite the *Mariani* court's decision for the proposition that " 'accepting Defendants' argument "would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act [in an ADA case].' " Opp'n. at 7 (quoting *Mariani*, 2017 WL 2929453, at *3 (internal citations omitted)). In this Court's view, the possibility of federal courts declining to exercise jurisdiction over claims under a particular California statute is not in itself a reason to exercise such jurisdiction, and instead begs the question of whether such jurisdiction is appropriate. To the extent that this statement from *Mariani* suggests that plaintiffs might choose to prosecute parallel ADA and Unruh Act claims in federal and state court, however, the potential duplication of effort that would result weighs in favor of exercising supplemental jurisdiction.

disability discrimination claims used in California state courts. Mot. at 8, 9. Plaintiff asserts construction-related accessibility claims and he is a high-frequency litigant as defined by California Code of Civil Procedure section 425.55(b). Mot. at 3. Accordingly, Plaintiff would be subjected to each of the heightened pleading requirements in California Code of Civil Procedure section 425.50 if he filed in California state court. The court in *Johnson v. Morning Star Merced, LLC* succinctly defined those heightened pleading requirements:

> "Section 425.50 imposes the following pleading requirements: (1) complaint must allege whether it is filed by or on behalf of a high-frequency litigator; (2) the number of complaints alleging a construction related accessibility claim that were filed by the high frequency litigator in the past twelve months; (3) the reason the high frequency litigator was in the region of the defendant's business; and (4) the specific reason that the high frequency litigator desired access to the defendant's business. Cal. Code Civ. P. § 425.50(a)(4). Additionally, a high frequency litigator must verify his complaint and pay an additional filing fee. See Cal. Code Civ. P. § 425.50(b); Cal. Gov. Code § 70616.5.

*Johnson v. Morning Star Merced, LLC,* No. 1:18-CV-0558 AWI EPG, 2018 WL 4444961, at *5 (E.D. Cal. Sept. 14, 2018). Federal courts have applied the Federal Rules of Civil Procedure instead of the pleading requirements outlined in California Code of Civil Procedure section 425.50. *Id.* (citing, *e.g.*, *Saavedra v. Chu*, 2017 WL 2468779, *1 (C.D. Cal. June 7, 2017); *Anglin v. Bakersfield Prosthetic & Orthotics Ctr.*, 2013 WL 6858444, *4–5 (E.D. Cal. Dec. 30, 2013); *Oliver v. In-N-Out Burgers*, 286 F.R.D. 475, 477 (S.D. Cal. 2012)).

Defendants note several district court decisions that have accepted their argument. *See, e.g.*, *Velez v. Il Fornaio (Am.) Corp.*, No. 3:18-cv-1840-CAB, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018) (declining to exercise supplemental jurisdiction over a plaintiff's Unruh Act claim in part because doing so would frustrate the California legislature's attempt to discourage vexatious disability discrimination by adopting heightened pleading requirements for the Unruh Act); *Cuddeback*, 262 F. Supp. 3d at 1025; *Brick Oven Rest.*, 406 F. Supp. 2d at 1120. These cases "emphasize that the plaintiffs are high frequency litigants, that there is nothing to be gained by litigating in federal court other than to avoid state pleading requirements, the plaintiffs are engaged in forum shopping, and that considerations of comity and discouraging forum shopping constitute 'exceptional circumstances' under § 1367(c)(4)." *Morning Star Merced, LLC*, 2018

United States District Court
Northern District of California

13

1    WL 4444961, at *5.

2           Other district court decisions have, however, rejected this argument. *See, e.g., Morning*

3    *Star Merced, LLC*, 2018 WL 444496; *Mariani*, 2017 WL 2929453 at *11; *Schoors*, 2017 WL

4    1807954. "These cases emphasize that considerations of fairness and efficiency outweigh any

5    concerns over comity, and that there is nothing improper about a litigant choosing to litigate in

6    federal court." *Morning Star Merced, LLC*, 2018 WL 4444961, at *6 (internal citations omitted).

7           Applying the *Gibbs* factors, this Court finds the reasoning of the *Morning Star Merced*

8    court persuasive and accordingly finds no compelling reason to decline to exercise supplemental

9    jurisdiction over Plaintiff's state-law claims. Comity concerns weigh in favor of Defendants'

10   argument, given that the California legislature has enacted heightened pleading requirements for

11   suits like this one.[7] However, "it is not efficient, convenient, or fair to require [Plaintiff] to file

12   two nearly identical cases involve [sic.] materially identical proof and issues." *Id.* It is more

13   economical to have all of Plaintiff's claims heard in one court "instead of requiring duplicative

14   efforts in multiple courts, possibly involving multiple juries, and possibly leading to inconsistent

15   results." *Id.* Nor should a plaintiff be forced to choose between either proceeding in two separate

16   forums or forsaking the plaintiff's entitlement to bring an ADA claim in federal court and instead

17   litigating it in state court. Accordingly, the Court finds no compelling reason to decline to

18   exercise supplemental jurisdiction over Plaintiff's state-law claims.

## IV.   CONCLUSION

20          For the foregoing reasons, Defendants' motion is DENIED.

21          **IT IS SO ORDERED.**

22   Dated: June 28, 2019

23
24                                                    _____
                                                      JOSEPH C. SPERO
                                                      Chief Magistrate Judge
25

26   _____
     [7] The parties do not address the purpose or legislative history of the legislature's decision to
27   impose heightened pleading requirements on frequent disability access litigants. To the extent the
     legislature may have been concerned about defendants facing a large volume of such lawsuits,
     comity weighs in favor of declining to exercise jurisdiction. To the extent that the legislature may
28   have intended to alleviate congestion of the California courts, however, allowing plaintiffs to bring
     their claims in federal court would promote rather than impair that goal.

14